# Exhibit I

JOHN D. ROCKEFELLER IV, WEST VIRGINIA, CHAIRMAN

DANIEL K. INOUYE, HAWAII — KAY BAILEY HUTCHISON, TEXAS
JOHN F. KERRY, MASSACHUSETTS — OLYMPIA J. SNOWE, MAINE
BARBARA BOXER, CALIFORNIA — JIM DeMINT, SOUTH CAROLINA
BILL NELSON, FLORIDA — JOHN THUNE, SOUTH DAKOTA
MARIA CANTWELL, WASHINGTON — ROGER F. WICKER, MISSISSIPPI
FRANK R. LAUTENBERG, NEW JERSEY — JOHNNY ISAKSON, GEORGIA
MARK PRYOR, ARKANSAS — ROY BLUNT, MISSOURI
CLAIRE McCASKILL, MISSOURI — JOHN BOOZMAN, ARKANSAS
AMY KLOBUCHAR, MINNESOTA — PATRICK J. TOOMEY, PENNSYLVANIA
TOM UDALL, NEW MEXICO — MARCO RUBIO, FLORIDA
MARK WARNER, VIRGINIA — KELLY AYOTTE, NEW HAMPSHIRE
MARK BEGICH, ALASKA — DEAN HELLER, NEVADA

ELLEN DONESKI, STAFF DIRECTOR
BRIAN M. HENDRICKS, REPUBLICAN STAFF DIRECTOR AND GENERAL COUNSEL

**United States Senate**
COMMITTEE ON COMMERCE, SCIENCE,
AND TRANSPORTATION
WASHINGTON, DC 20510-6125
WEB SITE: http://commerce.senate.gov

October 9, 2012

Mr. Scott E. Howe
President and Chief Executive Officer
Acxiom
601 East 3rd Street
Little Rock, Arkansas 72201

Dear Mr. Howe,

    I am writing to request information about your company's data collection and use practices. For years, companies like yours, commonly referred to as "data brokers," have collected data about consumers and then sold that information to interested parties for a variety of purposes.

    Because consumers are now able to conduct nearly all of their daily business online, an unprecedented amount of personal, medical, and financial information about them can be mined, collected, and sold. Consumers will increasingly use the Internet to make purchases, plan trips, research medical conditions, interact with friends and relatives, do their jobs, and pursue their interests. An ever-increasing percentage of their lives will be available for download and the digital footprint they will inevitably leave behind will become more specific and potentially damaging, if used improperly.

    As use of the Internet has grown, the data broker industry has already evolved to take advantage of the increasingly specific pieces of information about consumers that are now available. While companies like yours engage in these practices, consumers are largely unaware of how your company uses their sensitive information for financial gain.[1]

    In recent years, your industry's practices have generated scrutiny from various entities, including major media outlets and the Federal Trade Commission. In March, the FTC released a report on privacy, where it advocated for targeted legislation to "address the invisibility of, and consumers' lack of control over, data brokers' collection and use of consumer information." In making its recommendation, the FTC noted that "efforts of the data broker industry to establish self-regulatory rules concerning consumer privacy have fallen short."[2]

---

[1] *You for Sale: Mapping, and Sharing the Consumer Genome*, The New York Times (June 16, 2012).

[2] Federal Trade Commission, *Protecting Consumer Privacy in an Era of Rapid Change: Recommendations For Businesses and Policymakers* (March 2012).

Letter to Mr. Howe
October 9, 2012

    Companies in your industry have also in recent years suffered several high-profile data breaches.[3] Through these breaches, computer hackers obtained sensitive consumer data that had been collected and stored by companies in your industry. These breaches highlighted the need for both the Congress and the American people to better understand what consumer information is being collected and stored. The breaches served as a stark reminder that very little is known about the information companies likes yours have about American consumers.

    Since I became Chairman of the Senate Commerce Committee, I have sought to better understand your industry. Because your industry has monetized consumer data, it is critical that we understand what information companies like yours are already collecting and selling. Yet, answers to basic questions remain elusive. These questions include:

- What data about consumers does your industry collect?

- How specific is this data?

- How does your industry obtain this data?

- Who buys this data and how is it used?

    To answer these questions and help the Committee better understand your company's practices, I ask that you provide responses to the following requests by Friday, November 2, 2012. In each of the requests below, "company," "you," or "your" refers to Acxiom and any of its parents, subsidiaries, and affiliates. "Company" includes trade names, operations under assumed names, fictitious business names, corporations, limited liability companies, unincorporated divisions, joint ventures, partnerships, sole proprietorships, associations, cooperatives, and any other legal entities.

1. Provide a list identifying each entity, including private sources and government agencies and offices, from which you have collected or otherwise received data from or about consumers at any time since January 1, 2009, and list each type of data you have collected or otherwise received from each entity. For each entity listed, provide the contract between your company and the entity, which includes the terms related to the transfer of consumer data and the amount of money your company has paid that entity to acquire consumer data since January 1, 2009.

2. Describe each method or mechanism you have used to collect data from or about consumers at any time since January 1, 2009, including the method or mechanism used by entities that have provided data to your company. For each data collection method or mechanism, please indicate whether and how the collected data is linked to specific consumers, computers, or devices.

---

[3] *Breach Brings Scrutiny*, The Wall Street Journal (April 5, 2011); *United States v. ChoicePoint, Inc.*, No. 1 06-CV-0198 (N.D. Ga. filed Jan. 30, 2006); *In re Reed Elsevier Inc. & Seisint, Inc.*, FTC Docket No. C-4226 (July 29, 2008).

Letter to Mr. Howe
October 9, 2012

3. Identify the consumer data your company has collected, received, or otherwise obtained since January 1, 2009, including documents sufficient to show the specificity of that consumer data.

4. List each product or service you have offered to third parties at any time since January 1, 2009, that uses, incorporates, or otherwise relies on data from or about consumers. For each product or service, please describe:

    a. Each type of data that may be used to develop or otherwise provide the product or service;
    b. Each type of data that you offer or otherwise provide to a third party using the product or service;
    c. Each type of entity or individual to which you sell, provide, or otherwise give access to the product or service;
    d. Any prohibitions, restrictions, or limitations on the sale or use of, or access to, the product or service;
    e. Whether or not the product or service is subject to the Fair Credit Reporting Act (FCRA) and, if so, each step you take to ensure compliance with all relevant provisions of the FCRA; and
    f. Whether consumers can opt-out of having their data included in the product or service, and, if so:
        i. Describe the process through which a consumer can opt out, including any fee a consumer must pay to exercise their opt-out rights, and provide screen shots or documents setting forth each step a consumer must take to exercise the opt out.
        ii. Describe and provide documents demonstrating how you make consumers aware of their opt-out rights.
        iii. Since January 1, 2009, provide the number of consumers that have opted out.

5. For each product or service identified in response to request 4, please provide:

    a. Copies of all advertising or marketing materials regarding the product or service;
    b. Screen shots or other documents setting forth each step an entity must take to access, implement, and use the product or service; and
    c. Representative samples of all reports, lists, or other documents that may be created or developed by a third party using the product or service.

6. Identify any entity or individual that your company sold, provided, or otherwise gave access to each of the products or services identified in response to request 4 since January 1, 2009. For each entity or individual listed, please provide the following:

    a. Documents sufficient to show the type of data that you sold or otherwise provided to the entity or individual, including each type of data that was sold or provided and the specificity of the consumer data that was shared;
    b. The amount of money the entity or individual paid for the data;
    c. The individual's or entity's stated, contractual, or intended use of the data;

Letter to Mr. Howe
October 9, 2012

    d. Contracts or agreements between your company and the entity or individual; and
    e. The manner in which your company provided access to the data, and any conditions, limitations, or restrictions under which you provide the data to the entity or individual.

7. Describe any processes, including audits, your company employs to determine whether a third party may access each product or service identified in response to request 4 and provide:
   a. Copies of all application, registration, or approval forms or other documents that your company requires prior to granting a third party access to the product or service;
   b. Documents or materials your company uses to verify, vet, or otherwise approve access by the third party; and
   c. The total number of instances where your company has refused to provide access to the product or service and, for each such instance, describe and provide documents regarding the reason(s) your company refused to provide access.

8. Do you provide consumers notice about your data collection, use, or sharing practices? If yes, please describe how you provide notice and provide copies of each notice.

9. Can consumers access, correct, delete, or suppress the information you maintain about them? If not, why not? If yes:
   a. List each type of data consumers can access, correct, delete, or suppress and each type of data consumers cannot access, correct, delete, or suppress;
   b. Describe the process through which a consumer can access, correct, delete, or suppress the data, including any fee a consumer must pay to exercise their rights, and provide screen shots or documents setting forth each step a consumer must take to access, correct, delete, or suppress the information maintained about them;
   c. Describe and provide documents demonstrating how you make consumers aware of their access, correction, deletion, or suppression rights; and
   d. Since January 1, 2009, provide the number of consumers that have requested access, corrections, deletions, or suppressions and the number of consumers that have received access, corrections, deletions, or suppressions. In each instance where you have not granted a consumer's request to access, correct, delete, or suppress the information you maintain about them, describe the reason(s) for the refusal and provide all relevant documents and correspondence.

10. Provide communications you have received from consumers or other entities, including the Better Business Bureau or state agencies, regarding the accuracy of the information you collect or maintain about consumers, or consumers' ability to access, correct, suppress, delete, or otherwise opt out of the collection, use, or sharing of the information you collect, use, or maintain about consumers.

11. To the extent not already provided, please provide copies of each claim or disclosure you make to consumers regarding: your data collection and use practices; each product or

Letter to Mr. Howe
October 9, 2012

    service that uses or otherwise relies on data from or about consumers; the accuracy of the data you maintain about them; and their ability to access, correct, delete, suppress or otherwise opt out of the collection, use, or sharing of the information collected, used, or maintained about them.

12. Provide copies of all articles of incorporation, annual or other periodic reports, and audited financial statements, including any accompanying notes and management discussion and analysis, for your company for the past 5 years.

    The Committee is conducting this investigation under the authority of Senate Rules XXV and XXVI. An attachment to this letter provides additional information about how to respond to the Committee's request. If you have any questions, please contact Melanie Tiano or Erik Jones with the Committee staff at (202) 224-1300.

Sincerely,

John D. Rockefeller IV
Chairman

Enclosure

cc:    Kay Bailey Hutchison
       Ranking Member