# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY LOU PETT; KATHLEEN FICK-GEE; DIANE BRYCE; PATTI DELVALLE; MICHELLE HOLCOMB; KIM READUS; ALICE REESE; ERIKA VAN ALLER; and LINDA WHITE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PUBLISHERS CLEARING HOUSE, INC., <br><br> Defendant. | Civil Action No. 2:22-CV-11389-DPH-EAS <br><br> **DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S[1] MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **[Oral Argument Requested]** <br><br> Complaint Filed:     June 22, 2022 <br> Complaint Served:   June 30, 2022 <br> FAC Filed:          September 19, 2022 |

## DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant PUBLISHERS CLEARING HOUSE, LLC ("PCH") respectfully requests that this Court dismiss Plaintiffs MARY LOU PETT's ("Pett"), KATHLEEN FICK-GEE's ("Fick-Gee"), DIANE BRYCE's ("Bryce"), PATTI DELVALLE's ("DelValle"), MICHELLE HOLCOMB's ("Holcomb"), KIM READUS's ("Readus"), ALICE REESE's ("Reese"), ERIKA VAN ALLER's ("Van Aller"); and LINDA WHITE's ("White") (collectively, "Plaintiffs") First

---

[1] Erroneously sued as Publishers Clearing House, Inc.

Amended Class Action Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which the Court can grant relief ("Motion"). The brief submitted with this Motion explains the legal basis for the motion.

Pursuant to L.R. 7-1, counsel for PCH and counsel for Plaintiffs have met and conferred on several occasions, both over the phone and via email, since Plaintiffs filed the original Complaint, including as recently as October 14, 2022. During those meet-and-confers, counsel discussed the subject matter of this Motion and the relief requested herein. No concurrence could be obtained.

DATED: October 19, 2022

**BAKER & HOSTETLER LLP**

By: *s/ Matthew D. Pearson*
    Casie D. Collignon
    Matthew D. Pearson

    BAKER HOSTETLER LLP
    600 Anton Blvd., Suite 900
    Costa Mesa, CA 92626
    Tel.: (714) 754-6600
    Fax: (714) 754-6611
    Email:mpearson@bakerlaw.com
    SBN 294302

    Attorneys for Defendant
    PUBLISHERS CLEARING
    HOUSE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2022, I caused to be electronically filed the foregoing **DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew D. Pearson*

4870-8706-4118.4

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY LOU PETT; KATHLEEN FICK-GEE; DIANE BRYCE; PATTI DELVALLE; MICHELLE HOLCOMB; KIM READUS; ALICE REESE; ERIKA VAN ALLER; and LINDA WHITE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PUBLISHERS CLEARING HOUSE, INC., <br><br> Defendant. | Civil Action No. 2:22-CV-11389-DPH-EAS <br><br> **BRIEF IN SUPPORT OF DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S**[1] **MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **[Oral Argument Requested]** <br><br> Complaint Filed:  June 22, 2022 <br> Complaint Served: June 30, 2022 <br> FAC Filed:  September 19, 2022 |

## BRIEF IN SUPPORT OF DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant PUBLISHERS CLEARING HOUSE, LLC ("PCH") submits this

Brief in Support of its Motion to Dismiss Plaintiffs MARY LOU PETT's ("Pett"),

KATHLEEN FICK-GEE's ("Fick-Gee"), DIANE BRYCE's ("Bryce"), PATTI

DELVALLE's ("DelValle"), MICHELLE HOLCOMB's ("Holcomb"), KIM

READUS's ("Readus"), ALICE REESE's ("Reese"), ERIKA VAN ALLER's

---

[1] Erroneously sued as Publishers Clearing House, Inc.

("Van Aller"); and LINDA WHITE's ("White") (collectively, "Plaintiffs") First

Amended Class Action Complaint, [Dkt. No. 18] ("Motion").

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED ..............................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................1

I.   INTRODUCTION ...................................................................................... 2

II.  PLAINTIFFS' ALLEGATIONS ...................................................... 6

III. MOTION TO DISMISS STANDARD..........................................................10

IV.  ARGUMENT ...............................................................................................11

  A.   Plaintiffs Have Failed to Allege a Plausible Claim Against PCH. ...............11

    1.   Plaintiffs' Deliberate Omissions Are Fatal To Their Claim. ....................11

    2.   Plaintiffs' NextMark-Related Allegations Do Not Save Their Claims. ....15

V.   CONCLUSION.............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................1, 10

*Balistreri v. Pacifica Police Dep't.*,
    901 F. 2d 696 (9th Cir. 1990)....................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................1, 10

*Bishop v. Lucent Techs., Inc.*,
    520 F.3d 516 (6th Cir. 2008)...................................................................10

*Coulter-Owens v. Time, Inc.*,
    No. 12-CV-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016),
    aff'd, 695 F. App'x 117 (6th Cir. 2017) ................................................12

*Greenberg v. Life Ins. Co. of Virginia*,
    177 F.3d 507 (6th Cir. 1999)...................................................................15

*John Nashel & Tim Robinson v. The New York Times Company*, No.
    2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).............*passim*

*King v. William Beaumont Hosp.*,
    No. 10-CV-13623-DT, 2011 WL 860656 (E.D. Mich. Mar. 9,
    2011) ................................................................................................14

*Mitchell v. City of Detroit*,
    114 F.3d 1188 (6th Cir. 1997)................................................................10

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022)................12

*Saddle Rock Partners, Ltd. v. Hiatt*,
    No. 95-2326 GA, 1996 WL 859986 (W.D. Tenn. Mar. 26, 1996)...................15

*Schutter v. Harold Zeigler Auto Grp., Inc*.,
    No. 1:18-CV-47, 2018 WL 1536538 (W.D. Mich. Mar. 29, 2018)..................14

*Wheaton v. Apple Inc.*,
  No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25,
  2019) ......................................................................................*passim*

**Statutes**

Mich. Comp. Law 445.1711, *et seq* ............................................................1

Mich. Comp. Laws Ann. § 445.1712, Sec. 2(a) ......................................11

## **CONCISE STATEMENT OF ISSUES PRESENTED**

1.  Whether Plaintiffs' First Amended Class Action Complaint ("FAC")
    should be dismissed pursuant to Federal Rule of Civil Procedure
    12(b)(6) because Plaintiffs have not sufficiently alleged a plausible
    cause of action for a violation of Michigan's Preservation of Personal
    Privacy Act, Mich. Comp. Law 445.1711, *et seq*. ("PPPA").

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Authority:   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 556 (2007); *Wheaton v. Apple Inc.,* No. C 19-
02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019); *John
Nashel & Tim Robinson v. The New York Times Company*, No. 2:22-
CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

I.  **INTRODUCTION**

Since August 2021, at least 84 cases asserting violations of Michigan's Preservation of Personal Privacy Act ("PPPA") have been filed in either this Court or the United States District Court for the Western District of Michigan. Of those 84 cases, the plaintiffs in 70 of them have based their claims on the representations made by a largely unknown, third-party "list broker" by the name of NextMark, Inc. ("NextMark"). More specifically, the plaintiffs in those 70 cases have alleged that because NextMark claims on its website to be able to provide access to certain of the defendants' "mailing lists," the defendant ***must have*** disclosed that "mailing list" in violation of the PPPA. In each of those 70 cases, the plaintiffs either included within and/or attached to the complaint a screenshot of NextMark's website. Plaintiffs' counsel in each of those cases were the same.

This case is plaintiffs' counsel's 95th PPPA class action, and their 71st based, almost entirely, on NextMark's website. Here, nine Plaintiffs filed suit against PCH, each asserting the exact same allegations. They claim that PCH violated the PPPA by disclosing to a third party (i.e., NextMark), without Plaintiffs' consent and prior to July 31, 2016, Plaintiffs' names, addresses, and the fact that each of the Plaintiffs had purchased directly from PCH "written materials, sound recordings, and/or video recordings" (collectively referred to by Plaintiffs, as "Private Purchase Information"). Plaintiffs assert this claim on behalf of themselves and on behalf of

a putative class of Michigan residents.  For each alleged disclosure, they seek $5,000 in statutory damages based on a provision in the PPPA that has since been removed by the Michigan legislature and that has been held to apply only to disclosures that occurred prior to July 31, 2016.

Plaintiffs' FAC here, just like nearly every PPPA complaint filed by plaintiffs' counsel, contains few, if any, allegations as to the facts necessary to support their claim and, in particular, does not credibly alleged what they purchased (if anything), when, and how—all of which are required to plead a viable PPPA claim.  Plaintiffs claim to have purchased "written materials, sound recordings, and/or video recordings," yet they fail to allege what exactly they purchased.  They claim to have made this purchase prior to July 31, 2016—the last date on which statutory damages were available under the PPPA—yet they fail to provide an actual date of purchase.  They claim that they made this purchase directly from PCH, yet they fail to allege how.  And they claim that PCH disclosed, prior to July 31, 2016, their Private Purchase Information to a laundry list of third-party entities, yet, with the exception of their implausible allegations related to NextMark, they fail to specifically identify even one of those entities.

On the contrary, Plaintiffs' FAC, like most of the complaints filed in Plaintiffs' counsel's PPPA class actions, depends entirely on two screenshots allegedly taken from NextMark's website, neither of which supports their allegation

that PCH disclosed anything about anyone to anyone prior to July 31, 2016.  First, nowhere in either screenshot does it state that NextMark is in possession of anyone's Private Purchase Information, let alone Plaintiffs'.   In fact, NextMark's website states the opposite, referring any person interested in buying mailing lists to a third-party "list supplier."   Second, nowhere in either screenshot does it state that NextMark is authorized by PCH, or acting on PCH's behalf, in offering such "mailing lists" for sale. Third, nowhere in either screenshot does it state that PCH had actually delivered such  "mailing lists" to NextMark.  And fourth, nowhere in either screenshot does it state that PCH delivered such "mailing lists" to NextMark prior to July 31, 2016.

This is not the first time that allegations related to NextMark's (or some other third party's) representations have been challenged.  Nor would it be the first time that they have been held to be insufficient to state a viable claim under the PPPA. Indeed, they have been flatly rejected on at least two prior occasions, with the most recent occurring on October 11, 2022. First, in *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019), the United States District Court for the Northern District of California dismissed a PPPA claim (1) filed by these same plaintiffs' attorneys and (2) relying on similarly questionable screenshots for failure to allege a plausible violation of the PPPA because the screenshots did not "provide sufficient facts to support" the plaintiffs' claims and

plaintiffs had "failed to explain anything about" what, in fact, the third party operating the website actually possessed. Then, earlier this month, this Court in *John Nashel & Tim Robinson, Plaintiffs, v. The New York Times Company, Defendant.* ("*Nashel*"), No. 2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), dismissed another PPPA putative class action that (1) was filed by plaintiffs' counsel here and (2) relied on screenshots from NextMark's website, stating that "Plaintiffs relied on evidence that creates only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period" and that "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." The same is true here; at best, the FAC raises only the suspicion of a PPPA claim against PCH.

At bottom, Plaintiffs filed the FAC and relied on the NextMark screenshots in the hopes that their barebones allegations would survive a motion to dismiss. They should not. If Plaintiffs have a valid basis for believing that PCH disclosed to NextMark their Private Purchase Information, they could have alleged the pertinent and necessary facts. They did not. Thus, just as the Northern District of California and the Eastern District of Michigan did before it, this Court should find Plaintiffs' allegations insufficient to state a claim under the PPA and dismiss the FAC in its entirety and with prejudice.

## II.   <u>PLAINTIFFS' ALLEGATIONS</u>

Each of the nine named Plaintiffs makes the exact same allegations.  **First**, they each allege that they are "natural person[s] and citizen[s] of the State of Michigan," and reside in various Michigan cities. [Dkt. No. 18, ¶¶ 10-18.]  **Second,** they each allege that they "purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016." [*Id.* at ¶¶ 10 -18.]  **Third**, they each allege that they purchased "such products…directly from PCH." [*Id.* at ¶¶ 10 -18.]  **Fourth**, they each allege that "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, [their] Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files" and "rented or exchanged mailing lists containing [their] Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from [Plaintiffs] or even giving [them] prior notice of the rentals, exchanges, and/or other disclosures." [*Id.* at ¶¶ 10 -18.]  **And fifth,** they each allege that as a result of PCH's alleged disclosures, they "have received a barrage of unwanted junk mail," [*id.* at ¶ 1].

Plaintiffs, however, fail to allege exactly what they purchased, when they purchased it, or how they purchased it directly from PCH. [*See generally id.*] They also do not attempt to explain why they believe PCH's alleged disclosures caused or even contributed to an increase in junk mail. [*See generally id.*]

Plaintiffs' lack of explanation does not stop there. Throughout the FAC, Plaintiffs allege that PCH disclosed their Private Purchase Information to a myriad of third parties, including "data aggregators," [*id.* at ¶¶ 1, 10-18, 51]; "data appenders," [*id.* at ¶¶ 1, 10-18, 51]; "data cooperatives," [*id.* at ¶¶ 1, 10-18, 52]; "list brokers," [*id.* at ¶¶ 1]; "other consumer-facing businesses," [*id.* at ¶ 51]; "non-profit organizations seeking to raise awareness and solicit donations," [*id.*]; "political organizations soliciting donations, votes, and volunteer efforts," [*id*]; "direct-mail advertisers," [*id.* at ¶ 81]; "other third parties," [*id.* at ¶ 6]; and "anybody willing to pay for it," [*id.* at ¶ 56].

From this laundry list of third parties to which Plaintiffs claim PCH disclosed their Private Purchase Information, one would assume that Plaintiffs identified in the FAC at least a few third parties in possession of their Private Purchase Information. They do not.   They identify no "data aggregators," "data appenders," "data cooperatives," "other consumer-facing businesses," "non-profit organizations," or "political organizations" to which they claim PCH disclosed their Private Purchase Information.  [*See generally id.*]

Indeed, the sole third party identified by Plaintiffs as having been provided their Private Purchase Information is NextMark, a "list broker."   [*Id.* at ¶ 2.] Specifically, Plaintiffs rely on two screenshots allegedly taken from NextMark's website on which, Plaintiffs claim, NextMark "offers to provide renters access to the mailing list titled 'Publishers Clearing House Magazine Buyers Mailing List'," [*id.* at ¶ 2, Ex. A] (the "Magazine Buyers Mailing List"), and "access to the mailing list titled 'Publishers Clearing House Book, Music & Video Buyers Mailing List'," [*Id.* at ¶ 3, Ex. B] (the "Book, Music & Video Buyers Mailing List").  Both screenshots are included below.





[*Id.* at ¶¶ 2, Ex. A; 3, Ex. B.]

These screenshots in no way say what Plaintiffs say they say. **First**, both screenshots say that their respective lists are "generated from PCH's various sweepstakes mailings," not from a list of persons who purchased "written materials, sound recordings, and/or video recordings" from PCH. [*See id.* at ¶ 2, Ex. A; *id.* at ¶ 3, Ex. B.] **Second,** the Magazine Buyers Mailing List screenshot says that the list contains "[i]deal *prospects* for magazine subscriptions," not that it contains a list of magazine subscribers. [*See id.* at ¶ 2, Ex. A (emphasis added).] **Third**, neither

screenshot suggests that any of the Plaintiffs are included in either the Magazine Buyers Mailing List or the Book, Music & Video Buyers Mailing List, nor do they provide any information (i.e., date ranges) that would allow this Court to presume Plaintiffs were included in them. [*See id.* at ¶ 2, Ex. A; *id.* at ¶ 3, Ex. B.] **And fourth**, neither screenshot states that the Magazine Buyers Mailing List or the Book, Music & Video Buyers Mailing List contains the names *and* addresses of the persons included in it; they merely show an envelope icon. [*See id.* at ¶¶ 2, Ex. A; 3, Ex. B.]

## III. <u>MOTION TO DISMISS STANDARD</u>

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if there are insufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F. 2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 556 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

## IV.   ARGUMENT

### A.   Plaintiffs Have Failed to Allege a Plausible Claim Against PCH.

Just like the complaints in both *Wheaton* and *Nashel*, Plaintiffs' FAC here is riddled with bald assertions, unadorned and unsupported by facts, that PCH violated, prior to July 30, 2016, Plaintiffs' and the putative class members' rights under the PPPA. And, just as the courts in both *Wheaton* and *Nashel* held, such conclusory assertions are insufficient to state a viable claim. *Mitchell v. City of Detroit*, 114 F.3d 1188 (6th Cir. 1997) (affirming dismissal because the complaint's "conclusory allegations that [plaintiff's] rights were violated…are not sufficient to state a claim"). Plaintiffs' FAC must be dismissed.

### 1.   Plaintiffs' Deliberate Omissions Are Fatal To Their Claim.

The PPPA makes clear that it only prohibits the unconsented-to disclosure to third parties of "a record or information that personally identifies the customer as having purchased, leased, rented, or borrowed" "books or other written materials, sound recordings, or video recordings[.]" Mich. Comp. Laws Ann. § 445.1712, Sec.

2(a).  Plaintiffs know this; they repeatedly reference this provision throughout their FAC. [*See* Dkt. No. 18, ¶¶ 1, 51, 55, 69-70, 76, 80.]

Nevertheless, nowhere in the FAC do any of the nine Plaintiffs identify what it is they claim to have purchased from PCH.  In fact, they go out of their way to keep their alleged purchases deliberately vague.  For example, they each allege that they purchased "purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016."  [*Id.* at ¶¶ 10-18.] Not surprisingly, their allegations track exactly the language of the PPPA.  *See* Mich. Comp. Laws Ann. § 445.1712, Sec. 2(a).

Additionally, Plaintiffs fail to allege *when* they purchased whatever it is they purchased.  They merely state that they purchased *something* at *some time* prior to July 31, 2016.  This, too, is not surprising, given that (1) Plaintiffs only seek statutory damages under the PPPA and (2) after July 30, 2016, statutory damages were no longer available. *See Pratt v. KSE Sportsman Media, Inc*., No. 1:21-CV-11404, 2022 WL 469075, at *7 (E.D. Mich. Feb. 15, 2022) ("Effective July 31, 2016, however, the Michigan legislature amended the PPPA to remove statutory damages, leaving only actual damages, damages for emotional distress, and reasonable costs and attorney's fees.")

Next, while Plaintiffs allege to have purchased something "directly from

PCH," [Dkt. No. 18, ¶¶ 10-18], a requisite element of their PPPA claim, *see Coulter-Owens v. Time, Inc.,* No. 12-CV-14390, 2016 WL 612690, at *4 (E.D. Mich. Feb. 16, 2016), aff'd, 695 F. App'x 117 (6th Cir. 2017) (dismissing PPPA claim where the plaintiff purchased the magazine from a third-party reseller, not the defendant directly, because "to the extent there were any disclosures affecting plaintiff and the class members, the [PP]PA only covers any disclosures made by the third-party resellers"), they do not allege that they made purchases "directly from PCH" online, over the phone, or through the mail, despite acknowledging that customers can purchase "written materials" and "audiovisual materials" from PCH "through numerous media outlets, *including the Internet, telephone, or traditional mail*," [*id.* at ¶ 55 (emphasis added)]. Again, their allegations are wholly conclusory, devoid of any factual information, and specifically tailored to meet the elements of a PPPA cause of action without providing any factual information that could otherwise be refuted.

Finally, and most egregiously, with the exception of NextMark, Plaintiffs fail to specifically identify any third-party entity to which they claim PCH disclosed their Private Purchase Information.  [*See generally id.*]  That is not to say that Plaintiffs do not catalogue the types of third-party entities to which they claim PCH disclosed their Private Purchase Information.   Indeed, they purport to identify ten different types of such third-party entities: (1) data aggregators," [*id.* at ¶¶ 1, 10-18, 51]; (2)

"data appenders," [*id.* at ¶¶ 1, 10-18, 51]; (3) "data cooperatives," [*id.* at ¶¶ 1, 10-18, 52]; (4) "list brokers," [*id.* at ¶¶ 1]; (5) "other consumer-facing businesses," [*id.* at ¶ 51]; (6) "non-profit organizations seeking to raise awareness and solicit donations," [*id.*]; (7) "political organizations soliciting donations, votes, and volunteer efforts," [*id*]; (8) "direct-mail advertisers," [*id.* at ¶ 81]; (9) "other third parties," [*id.* at ¶ 6]; and (10) "anybody willing to pay for it," [*id.* at ¶ 56]. One would assume, with categories as broad as "other third parties" and "anybody willing to pay," Plaintiffs would be able to identify at least one, non-NextMark entity in possession of their Private Purchase Information. They do not. They merely generically identify categories of third parties to whom PCH *could have* disclosed their Private Purchase Information in the hopes that this Court does not require them to plead more.

These factually devoid allegations, just like those in *Wheaton* and *Nashel*, do not state a viable claim under the PPPA; they are nothing more than recitals of the elements of Plaintiffs' PPPA claims. Their claims should be dismissed. *See, e.g.,* *Schutter v. Harold Zeigler Auto Grp., Inc.*, No. 1:18-CV-47, 2018 WL 1536538, at *1 (W.D. Mich. Mar. 29, 2018) (dismissing claims because the "[c]omplaint contains bare recitations of the elements of [plaintiff's] claims, presents legal conclusions without supporting facts, and fails to address all material elements necessary to state a plausible claim for relief"); *King v. William Beaumont Hosp.*,

No. 10-CV-13623-DT, 2011 WL 860656, at *2 (E.D. Mich. Mar. 9, 2011) (dismissing claim because "merely stating a legal conclusion and recitation of the elements of a claim are insufficient to state a claim under Rule 12(b)(6)").

### 2.    Plaintiffs' NextMark-Related Allegations Do Not Save Their Claims.

The *one* third-party entity that each Plaintiff alleges is in possession of his or her Private Purchase Information is NextMark. [*See* Dkt. No. 18, ¶ 2, Ex. A.; 3, Ex. B.]  According to Plaintiffs, NextMark, "a list broker," "offers to provide renters access to the mailing list titled 'Publishers Clearing House Magazine Buyers Mailing List', which contains the Private Purchase Information of 647,541 of PCH's U.S.-based magazine subscription purchasers at a base price of '$100.00/M [per thousand],' (i.e., 10 cents apiece)."  [*Id.* at ¶ 2.] Furthermore, Plaintiffs allege that NextMark "also offers to provide renters access to the mailing list titled 'Publishers Clearing House Book, Music & Video Buyers Mailing List', which contains the Private Purchase Information of 1,429,511 of PCH's U.S.-based book, music, and video purchasers at a base price of "$100.00/M [per thousand],' (i.e., 10 cents apiece)."  [*Id.* at ¶ 3.]

That is far from the truth.  **First**, NextMark, itself, admits on its own website that it does not "sell mailing lists or other media." [*See* NextMark.com, Frequently Asked Questions, located at: https://www.nextmark.com/company/faq/ (last

visited: October 7, 2022).][2] **Second**, a search of NextMark's website for

"Publishers Clearing House" produces 13,303 "mailing lists found," none of which

could be identified as actually relating to PCH. [*See* NextMark.com, "Publishers

Clearing House" search results, located at:

https://lists.nextmark.com/market?page=order/online/search_results&startIndex=0

(last visited: October 7, 2022).] **Third,** selecting the "Get More Information"

button on NextMark's page (as seen in Exhibits A and B to the FAC) reroutes the

user to another page, which states:

> Your request will be instantly routed to the *list supplier*.
> *More than 1,400 suppliers are represented here on this*
> *website*. It's important to fill out the form as completely as
> possible to ensure your request is handled properly. After
> submission, you will get a confirmation via email that
> provides you with your tracking code and list supplier
> contact information.

---

[2] Although the entirety of NextMark's website is not included in the FAC, the Court
can still consider it in connection with this Motion to Dismiss because NextMark's
website is "referred to in the [FAC]" (i.e., Plaintiffs attach to the FAC two
screenshots from NextMark's website) and is "central to [Plaintiffs'] claims."
*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)
(considering, at motion to dismiss phase, insurance policies not attached to the
complaint because "the insurance policies are referred to throughout the complaint"
and because "the policies are central to the [plaintiffs'] claims"). Indeed, the entirety
of Plaintiffs' PPPA claim arises out of PCH's alleged disclosures to NextMark.
Furthermore, "[o]n a motion to dismiss, the court may consider the entire text of
documents from which selected passages are referred to in the complaint without
converting the motion into one for summary judgment." *Saddle Rock Partners, Ltd.
v. Hiatt*, No. 95-2326 GA, 1996 WL 859986, at *5 (W.D. Tenn. Mar. 26, 1996).
Here, Plaintiffs rely on and attach portions of NextMark's website. Therefore, the
Court can consider the entire NextMark website.

[*See* NextMark.com, "Request for Information" Page, located at:

https://lists.nextmark.com/market?page=research/request_info&id=552860 (last

visited: October 7, 2022) (emphasis added).]

In other words, contrary to Plaintiffs' repeated allegations, NextMark does not

represent that it *has* any mailing lists, including any PCH mailing lists.  It only claims

to be able to put the user in contact with a "list supplier," which neither NextMark

nor Plaintiffs identify.

But even focusing just on the screenshots included in Plaintiffs' FAC, it is

clear that NextMark is not the "hook" Plaintiffs claim it to be.  Nothing in either

screenshot suggests that the Private Purchase Information of any of the nine

Plaintiffs is included in either the Magazine Buyers Mailing List or the Book, Music

& Video Buyers Mailing List.  [*See* Dkt. No. 18, ¶¶ 2, Ex. A; 3, Ex. B.]  In fact, both

screenshots suggest otherwise.  Both screenshots claim to have "counts through

06/30/2022," [*see id* at ¶¶ 2, Ex. A; 3, Ex. B], but every Plaintiff here alleges to have

purchased something from PCH roughly six years before that date, [*Id.* at ¶¶ 10-18].

Moreover, neither screenshot suggests that the two lists include individuals who

purchased from PCH "written materials, sound recordings, and/or video recordings,"

as Plaintiffs claim they did.  Instead, according to the screenshots, the lists were

"generated from PCH's sweepstakes mailings," which none of the Plaintiffs claim

to have received.  [*Id.* at ¶¶ 2, Ex. A; 3, Ex. B.]

Additionally, nothing in either screenshot suggests that the list actually identifies what products the individuals included within it purchased. Exhibit A states that the individuals "have purchased from over 100 popular titles wide variety of interest categories" but not what titles they actually purchased. [*Id.* at ¶ 2, Ex. A.] Furthermore, Exhibit A describes the individuals as "[i]deal *prospects* for magazine subscriptions, general merchandise, publishing, fundraising, credit card, home, garden, ethnic, children, family, education, must and book clubs, health and fitness, mature, travel, hobbies, collectibles, and sports offers." [*Id.* at ¶ 2, Ex. A (emphasis added).] A list of *prospects* that could be interested in a wide variety of topics is not a list of Private Purchase Information.

The same is true with Exhibit B. It describes the individuals included on the Music & Video Buyers Mailing List as "promotionally responsive and credit-worthy buyers of merchandise at affordable prices" who are "music, book & video enthusiast" and who "spend their discretionary income on a variety of merchandise for their entertainment and enjoyment." [*Id.* at ¶ 3, Ex. B.] Again, nothing in Exhibit B suggests, let alone establishes, that the Book, Music & Video Buyers Mailing List identifies anyone, let alone Plaintiffs, as having purchased "written materials, sound recordings, and/or video recordings" from PCH. [*Id.* at ¶ 3, Ex. B.] At best, it suggests that these individuals might be interested in purchasing such materials.

Finally, nothing in either screenshot suggests (1) that the list was provided to

NextMark by PCH (if NextMark has it at all) or (2) that the list identifies the individuals by name and address.  The screenshots provide an envelope icon next to the word "channels" and the ability to select "ZIP" and "ZIP +4." [*Id.* at ¶ 2, Ex. A; ¶ 3, Ex. B.]   But neither an envelope icon nor a zip code is sufficient to constitute Private Purchase Information, as that term is defined by Plaintiffs.

This case, therefore, is similar to *Wheaton* and nearly identical to *Nashel,* both cases in which the court dismissed, at the pleading stage, the plaintiffs' PPPA claims. In *Wheaton*, the United States District Court for the Northern District of California dismissed a similar PPPA claim that (1) was brought by same plaintiffs' attorneys who filed this lawsuit and (2) was based on similar screenshots as those included in the FAC here. *Id.* at *5. The plaintiffs in *Wheaton*, like Plaintiffs here, attached to their complaint a screenshot from the website of what the plaintiffs claimed was "one of the many traffickers of….Personal Listening Information," which they asserted, like Plaintiffs assert here, was evidence that the defendant had violated the PPPA. *Id.* at *4; [*see also Wheaton*, Case No. 5:19-cv-02883, Dkt. No. 1 ("*Wheaton* Complaint"), attached hereto as **Exhibit A**, ¶ 48.]  Specifically, the screenshot in the *Wheaton* Complaint looked as follows:

| SEGMENTS | | PRICE | ID NUMBER | |
|---|---|---|---|---|
| 18,188,721 | TOTAL UNIVERSE / BASE RATE | $80.00/M | NextMark | 385690 |
| | 1 Month Hotline | + $12.00/M | Manager | |
| | 3 Month Hotline | + $8.00/M | UNIVERSE | |
| | | | 18,188,721 | |
| | | | LIST TYPE | |
| DESCRIPTION | | | Consumer | ✉ mail |
| iTunes and Pandora music Purchasers are consumers using major | | | | |
| internet providers for their music listening pleasure. iTunes and | | | SOURCE | |
| Pandora Music Purchasers enjoy playing their favorite radio | | | LIST MAINTENANCE | |
| stations from home, work, or mobile devises. Individual song, | | | Counts through | 04/01/2019 |
| video and record purchases and/or commercial free listening allow | | | Last update | 04/01/2019 |
| for a highly custom playlist along with a much wider geographical | | | Next update | 05/01/2019 |
| reach then local radio stations for a higher quality transmitted | | | SELECTS | |
| sound. These purchasers get access to more stations and a wider | | | AGE | 10.00/M |
| variety of programming options all hand selected by the | | | Buying Behavior | |
| individual. | | | Demographic | |
| | | | Education | 8.00/M |
| | | | Full Lifestyle | |
| iTunes and Pandora Music Purchasers are constantly looking for | | | GENDER | 10.00/M |
| the most up to date cutting edge technology. They are highly | | | Geography | 8.00/M |
| response to new technology, cell phones and apps, computers, | | | House Hold Income | 10.00/M |
| vacation packages, coupons, deal saving offers, trial run offers, | | | Interest | |
| entertainment, satellite TV and sports offers. | | | Mail Order Buyer | 10.00/M |
| | | | MARITAL STATUS | 10.00/M |
| | | | PRESENCE OF CHILDREN | 10.00/M |
| | | | GEOGRAPHY | |
| | | | USA | |

[*See* Ex. A, ¶ 48.]

The court analyzed the screenshot, characterized by the plaintiffs as "a listing by a third-party data broker selling customers' names, addresses, and personal listening information," and found that it did not "plausibly show[] that Apple disclosed plaintiffs' personal listening information." *Wheaton*, 2019 WL 5536214, at *4. Specifically, the court found that nothing in the screenshot suggested, let alone demonstrated, that the third-party entity was in possession of "any names, addresses, or personally identifying information of customers[.]" *Id.* At most, the screenshot had a "mail icon," which, according to the court, was "merely a picture of an

envelope." *Id.* Furthermore, the Court noted that "[w]ithout more information, *which was surely available to counsel*, this order will not speculate that the mail icon explicitly would lead to Apple customers' names and addresses[.]" *Id.* (emphasis added).

The court in *Nashel* reached the same conclusion.  There, the plaintiffs complaint largely mirrored the Plaintiffs' FAC here, except that it (1) provided more detail than the FAC here and (2) relied on two third-party entities, as opposed to the one relied upon here, to which the plaintiffs claimed the defendant disclosed their Personal Reading Information (i.e., NextMark and "Direct Magazine"). [*See generally Nashel,* Case No. 2:22-CV-10633, Dkt. No. 16 ("*Nashel* Complaint"), attached hereto as **Exhibit B**.] For example, as opposed to Plaintiffs here, the plaintiffs in *Nashel* actually identified what they allegedly purchased from the New York Times Company.  [*See id.* at ¶ 17 (alleging that "[w]hile residing in, citizens of, and present in Michigan, Plaintiffs purchased *their subscriptions to The New York Times newspaper* directly from NYT." (emphasis added)).]

Despite the level of factual specificity not present in the FAC here, the *Nashel* court still dismissed the complaint for failure to state a claim.  *Nashel*, 2022 WL 6775657, at *6.  In reviewing the two screenshots included within and attached to the *Nashel* Complaint, both of which are included below, the Court stated that they "create[d] only suspicion as to whether Defendant violated the PPPA during the pre-

July 31, 2016," which is insufficient to establish "a legally cognizable right of action[.]." *Id.* at *4.





[*See* **Ex. B,** *Nashel* Complaint, at ¶¶ 3-4.]

From these two screenshots, the *Nashel* court concluded that "the content of the [screenshots] d[id] not create a reasonable inference that Defendant violated the PPPA" because while "the two third-party list broker[s]…appeared to claim access to the private reading information of over a million active United States The New York Times subscribers[,]…nothing on the [screenshots] explains how the list brokers received Defendant's subscription list[,]" and, therefore, the screenshots "fail[ed] to support a crucial element of Plaintiffs' alleged action: that Defendant 'engaged in the business of selling written material to disclose information personally identifying the customer.'" *Id.* at *5.

The same is true here. Like the court in *Wheaton*, for this Court to find that Plaintiffs have stated a viable cause of action under the PPPA, this Court would have to assume, without any factual support, that NextMark is, in fact, in possession of Plaintiffs' Private Purchase Information.  And, like the court in *Nashel*, for this Court to find that Plaintiffs have stated a viable cause of action under the PPPA, this Court would have to assume, without any factual support, that, even if NextMark is in possession of Plaintiffs' Private Purchase Information, that that information came from PCH.  Such blatant speculation is neither warranted not permitted.

There can be no dispute that, in order to state a viable PPPA claim against PCH, Plaintiffs must allege *facts* that, if accepted as true, give rise to a *plausible*

inference that PCH disclosed *Plaintiffs'* Private Purchase Information without their consent and *before July 30, 2016.* Plaintiffs have failed to do so. Their claims must be dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Publishers Clearing House, Inc. respectfully requests that the Court dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' FAC for failure to state a claim.

DATED: October 19, 2022                    **BAKER & HOSTETLER LLP**

By: *s/ Matthew D. Pearson*
        Casie D. Collignon
        Matthew D. Pearson

BAKER HOSTETLER LLP
600 Anton Blvd., Suite 900
Costa Mesa, CA  92626
Tel.: (714) 754-6600
Fax: (714) 754-6611
Email:mpearson@bakerlaw.com
SBN 294302

Attorneys for Defendant
PUBLISHERS CLEARING
HOUSE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2022, I caused to be electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT PUBLISHERS CLEARING HOUSE, LLC'S**[3] **MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew D. Pearson*

4860-7217-4134.14

---

[3] Erroneously sued as Publishers Clearing House, Inc.

25