# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY LOU PETT; KATHLEEN FICK-GEE; DIANE BRYCE; PATTI DELVALLE; MICHELE HOLCOMB; KIM READUS; ALICE REESE; ERIKA VAN ALLER; and LINDA WHITE, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>PUBLISHERS CLEARING HOUSE, INC.,<br><br>      Defendant. | Civil Action No. 2:22-CV-11389-DPH-EAS<br><br>**RESPONSE TO PLAINIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Complaint Filed:  June 22, 2022<br>Complaint Served: June 30, 2022 |

On March 31, 2023, Plaintiffs Mary Lou Pett ("Pett"), Kathleen Fick-Gee, Diane Bryce, Patti DelValle, Michele Holcomb, Kim Readus, Alice Reese, Erika Van Aller, and Linda White (collectively, "Plaintiffs") filed in the above-referenced action a Notice of Supplemental Authority, citing to *Batts v. Gannett Co.,* Case No. 4:22-cv-10685, ECF No. 28 (E.D. Mich. Mar. 30, 2023) ("*Batts*"). [ECF No. 38.] Plaintiffs cited the *Batts* Opinion and Order Denying Defendant's Motion to Dismiss ("*Batts* Order") in support of three legal propositions, two of which have no bearing here.

1.First, Plaintiffs cite the *Batts* Order for the proposition that a plaintiff alleging a violation of the Michigan Protection of Personal Privacy Act ("PPPA") "necessarily ha[s] Article III standing to bring suit in federal court." [ECF No. 38, ¶ 2.] This holding is neither novel nor relevant to Publishers Clearing Houses, LLC's[1] ("PCH") Motion to Dismiss Second Amended Class Action Complaint. [ECF No. 25.] Courts have repeatedly found Article III standing in PPPA cases. *See, e.g., Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("Since the district court's decision, however, three district court cases have addressed this question and found that a plaintiff does have standing under the PPPA, that *Spokeo* does not change that, and that the new PPPA is not retroactive[.]"). And nowhere in PCH's Motion to Dismiss did it argue that Plaintiffs lacked Article III standing here. [*See generally* ECF No. 25.]

2.Second, Plaintiffs cite the *Batts* Order for the proposition that "the six-year limitation period found in M.C.L § 600.5813 applied to plaintiffs' PPPA claims, and that the limitation period was tolled for 101 days pursuant to Mich. Executive Order 2020-58 and Michigan Supreme Court Administrative Order 2020-3" [ECF No. 38, ¶ 3.] As PCH stated in its prior response to Plaintiffs' supplemental authority, [ECF No. 34, ¶ 2], although PCH reserves its right to contest this claim should Plaintiffs' complaint survive PCH's Motion to Dismiss, whether a six-year

---

[1] Erroneously sued as Publishers Clearing House, Inc.

limitation period applies to Plaintiffs' PPPA claims or whether that period was tolled by Michigan Executive Order 2020-58 and Michigan Supreme Court Administrative Order 2020-3 has no impact on the Court's order on PCH's Motion to Dismiss. In its Motion to Dismiss, PCH argued that Plaintiff had not plausibly alleged any violation of the PPPA, regardless of when an alleged violation occurred. [*See generally* Dkt. No. 25.]

3. Finally, Plaintiffs cite the *Batts* Order claiming (1) that "the *Batts* court found that the plaintiffs' complaint contained 'well- pleaded allegations that they were USA Today subscribers and that Gannett disclosed their private reader information without their authorization within the relevant time period'" and (2) that the *Batts* court "considered and rejected defendant's arguments regarding the recent decision in *Nashel v. The New York Times Co*., 22-cv-10633 (E.D. Mich. Oct.11, 2022)." [ECF No. 38, p. 2.]

4. As they did in their prior Notice of Supplemental Authority, [ECF No. 36], Plaintiffs ignore the key factual distinctions between the *Batts* case and this case.

5. In *Batts*, the plaintiffs alleged what, specifically, they purchased from the defendant (i.e., subscriptions to *USA Today* newspaper) and what they purchased fell clearly within the types of information protected from disclosure by the PPPA. [*See Batts* First Amended Class Action Complaint ("*Batts* Compl."), attached hereto

as **Exhibit A**, ¶¶ 9-13 (alleging for each of the five named plaintiffs that they, "[w]hile residing in, a citizen of, and present in Michigan,…purchased [their] subscription[s] to *USA Today* newspaper directly from [defendant]"). *See also* BOOKS, SOUND RECORDINGS, VIDEOS—PURCHASE, RENTAL, BORROWING—DISCLOSURE OF IDENTITY OF CUSTOMER, 1988 Mich. Legis. Serv. 378, Sec. 2 ("Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or ***other written materials***, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information ***concerning the purchase, lease, rental, or borrowing of those materials*** by a customer that indicates the identity of the customer." (emphasis added)).

6. In contrast, Plaintiffs here do not allege what, specifically, they purchased from PCH and, therefore, have not alleged any facts that would allow this Court to infer that PCH was even in possession of, let alone disclosed, information protected from disclosure by the PPPA. For example, unlike the Plaintiffs in *Batts*, each Plaintiff here generically alleges that he or she "purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period). [ECF No. 22, ¶¶ 18-26.] In other words, Plaintiffs

4872-7144-0732.2 4

copied and pasted the language of the PPPA into their complaint instead of alleging what they actually purchased from PCH.

7. Plaintiffs' failure to allege what they actually purchased from PCH is compounded by the fact that PCH sells a myriad of products, many, if not most of which, fall outside the purview of the PPPA. Plaintiffs' own allegations make this clear: "PCH has diversified beyond selling magazine subscriptions and *now offers general merchandise, collectible and home entertainment products like books and videos*." [ECF No. 22-4.]

8. In contrast, the plaintiffs in *Batts* allege that the defendant, Gannett Co., "is the publisher of various newspapers across the country such as the Detroit Free Press, as well as its flagship publication USA Today." [*Batts* Compl., attached hereto as **Exhibit A,** ¶ 17.] Thus, unlike here, the *Batts* plaintiffs' allegations that the defendant disclosed their information necessarily raised the inference that the information disclosed was protected by the PPPA (i.e., that the plaintiffs purchased a *USA Today* subscription).

9. Finally, in *Batts*, the plaintiffs did not include in their complaint any allegations that directly refuted their claims that the defendant violated the PPPA. Here, that is not the case. Here, the plaintiffs attached to their complaint screenshots that they allege demonstrate that PCH violated the PPPA when, in fact, they do the exact opposite. The screenshots attached to Plaintiffs complaint here state that:

- "Publishers Clearing House offers promotionally responsive and credit-worthy buyers of magazine subscriptions *generated from PCH's various sweepstakes mailings."* [ECF No. 22-2 (emphasis added).]

- *"Ideal prospects* for magazine subscriptions, *general merchandise,* publishing, *fundraising, credit card, home, garden, ethnic, children, family, education,* music and book clubs, *health and fitness, mature, travel, hobbies, collectibles, and sports offers*." [*Id.* (emphasis added).]

- "These buyers of books, videos, or music *are generated from PCH's sweepstakes mailings.*" [ECF No. 22-3 (emphasis added).]

- "They are *ideal prospects for a variety of offers* including: books, music, video, *general merchandise, credit card, fundraising, insurance, membership and club continuity offers*." [*Id.* (emphasis added).]

- "These buyers *are generated from PCH's various sweepstakes mailings and are ideal prospects for general merchandise,* publishing, *fundraising, credit card, home, garden, children & family, music and book <u>clubs</u>, health and beauty, sports, travel, inspirational, gifts & collectible offers*." [ECF No. 22-7 (emphasis added).]

- "These buyers *are generated from PCH's various sweepstakes mailings and are ideal prospects for general merchandise,* publishing,

*fundraising, credit card, home, garden, children & family, music and book <u>clubs</u>, health and beauty, sports, travel, inspirational, gifts & collectible offers*." [ECF No. 22-8 (emphasis added).]

10. Each of these screenshots make clear that if a list of information was disclosed, that list was "generated from PCH's various sweepstakes mailings" and, therefore, did not include "a record or information concerning the purchase, lease, rental, or borrowing of" PPPA-protected materials.

11. In truth, by continuing to bring to the Court's decision order in other PPPA cases that involve different facts and different parties, Plaintiffs here are only providing further support for PCH's argument that Plaintiffs here have not alleged sufficient facts to give rise to a plausible claim under the PPPA.

Respectfully submitted,

Dated: April 6, 2023

By: *s/ Matthew D. Pearson*

Casie D. Collignon
Matthew D. Pearson
BAKER HOSTETLER LLP
600 Anton Blvd., Suite 900
Costa Mesa, CA  92626
Tel.: 714-754-6600
Facs.: 714-754-6611
Email:   mpearson@bakerlaw.com
SBN 294302

*Attorneys for Defendant*
PUBLISHERS CLEARING HOUSE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I caused to be electronically filed the foregoing **RESPONSE TO PLAINIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew D. Pearson*
Matthew D. Pearson
