## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MARY LOU PETT, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>PUBLISHERS CLEARING HOUSE, INC.,<br><br>Defendant. | Case No. 22-cv-11389<br><br>Honorable Denise Page Hood |

## PLAINTIFFS' MOTION FOR RECONSIDERATION
## OF A NON-FINAL ORDER GRANTING IN PART
## <u>DEFENDANT'S MOTION TO DISMISS</u>

Plaintiffs Mary Lou Pett and eight other named plaintiffs (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, pursuant to Local Rule 7.1(h)(2), respectfully submit this Motion for Reconsideration of the Court's Order Granting in Part and Denying in Part (ECF No. 44 (the "Order")) Defendant Publishers Clearing House's ("Defendant") Motion to Dismiss (ECF No. 25 ("Defendant's Motion")) the Second Amended Class Action Complaint (ECF No. 22 ("SAC")).

On May 23, 2023, the Court granted Defendant's Motion in part with respect to disclosures of Private Purchase Information to any third-parties not specifically identified in the SAC (finding such disclosures "speculative"), denied the Motion in part with respect to disclosures of PPI to NextMark, Inc. and List Services Corp., and ordered that "any discovery shall be limited to only the named Plaintiffs." Order at 19-20, PageID.3393-94. For the reasons discussed in Plaintiffs' Motion and Brief, the Court should reconsider the portions of its Order granting Defendant's Motion with respect to unnamed third-parties and limiting discovery "to only the named Plaintiffs."

Under Eastern District of Michigan Local Rule 7.1(h)(2), a party may move for reconsideration of a non-final order. Under Local Rule 7.1(h)(2)(a), Plaintiffs must show that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law

before the court at the time of its prior decision."

Plaintiffs respectfully submit that the Court committed a clear error in dismissing the case with respect to disclosures to unnamed third parties, and in ordering that discovery in this putative class action lawsuit be limited to only the PPPA claim of the named Plaintiffs. Applying the correct pleading and discovery standards will change the outcome of the prior decision. Accordingly, the Court should reconsider and amend the Order to correct its dismissal of Plaintiffs PPPA claim with respect to disclosures to unnamed third-parties and its restriction on Plaintiffs obtaining discovery concerning issues of class certification.

This Motion is based upon the accompanying Brief in Support, the authority cited therein, and any other such written and oral argument presented to the Court.

Pursuant to Local Rule 7.1(a), counsel for Plaintiffs sought concurrence from counsel for Defendant regarding the relief sought in this Motion. Plaintiffs' counsel corresponded with counsel for Defendant on June 6th and counsel for Plaintiffs were unable to obtain concurrence.

Dated: June 6, 2023                    Respectfully submitted,

                                       */s/ E. Powell Miller*

                                       E. Powell Miller (P39487)
                                       **THE MILLER LAW FIRM, P.C.**
                                       950 W. University Drive, Suite 300
                                       Rochester, MI 48307
                                       Tel: 248-841-2200
                                       epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MARY LOU PETT, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PUBLISHERS CLEARING HOUSE, INC.,<br><br>Defendant. | Case No. 22-cv-11389<br><br>Honorable Denise Page Hood |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR**
**RECONSIDERATION OF A NON-FINAL ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

## <u>QUESTIONS PRESENTED</u>

1. Should the Court reconsider and amend the Court's Order (ECF No. 44) to correct its dismissal of Plaintiffs' PPPA claim with respect to disclosures to unnamed third-parties and its restriction on Plaintiffs obtaining discovery concerning issues of class certification?

    Plaintiffs answer: Yes.

## <u>MOST CONTROLLING AUTHORITIES</u>

- Fed. R. Civ. P. 8

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

- *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018)

- *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015)

- *Gaines v. Nat'l Wildlife Fed'n*, 2023 WL 3186284 (E.D. Mich. May 1, 2023)

- *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017)

- *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013)

# **TABLE OF CONTENTS**

QUESTIONS PRESENTED ........................................................... i

MOST CONTROLLING AUTHORITIES .............................................. ii

TABLE OF CONTENTS .............................................................. iii

TABLE OF AUTHORITIES ......................................................... iv

STANDARD OF REVIEW ...........................................................1

INTRODUCTION ....................................................................2

ARGUMENT .........................................................................3

    I.   Plaintiffs' Allegations Are Sufficient to State a Claim for Disclosures Made to Any Third Party, Specifically Named or Not .............................................3

    II.  The Order Mistakenly Finds That Plaintiffs' Allegations Are Not Sufficient With Respect to all Third-Parties. ................................................15

    III. The Court Also Erred by Limiting Discovery "to Only the Named Plaintiffs" ......................................................................................19

CONCLUSION .....................................................................20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Batts v. Gannett Co.*,
    2023 WL 3143695 (E.D. Mich. Mar. 30, 2023)..................................................11

*BBL, Inc. v. City of Angola*,
    809 F.3d 317 (7th Cir. 2015) .................................................. 5, 6, 9, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................... 3, 4, 5

*Blumberg v. Ambrose*,
    2014 WL 4988380 (E.D. Mich. Oct. 7, 2014).......................................12

*Boelter v. Hearst Commc'ns, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) .................................... 13, 14, 19

*Briscoe v. NTVB Media Inc.*,
    2023 WL 2950623 (E.D. Mich. Mar. 3, 2023)......................................11

*Cain v. Redbox Automated Retail, LLC*,
    981 F. Supp. 2d 674 (E.D. Mich. 2013) .............................................15

*Campbell v. D.C.*,
    972 F. Supp. 2d 38 (D.D.C. 2013)......................................................9

*Croixland Props. Ltd. P'ship v. Corcoran*,
    174 F.3d 213 (D.C. Cir. 1999)........................................................10

*Cty. Rd. Ass'n of Michigan v. Governor*,
    782 N.W.2d 784 (Mich. App. 2010).....................................................3

*Gaines v. Nat'l Wildlife Fed'n*,
    2023 WL 3186284 (E.D. Mich. May 1, 2023) ..................................... 4, 5, 10, 19

*Horton v. GameStop Corp.*,
    380 F. Supp. 3d 679 (W.D. Mich. 2018)..............................................10

*In re Netopia, Inc., Sec. Litig.*,
    2005 WL 3445631 (N.D. Cal. Dec. 15, 2005).......................................5, 11

*Jones v. City of Los Angeles*,
    2021 WL 6496719 (C.D. Cal. June 25, 2021)......................................6, 11

*Kruger v. Lely N. Am., Inc.*,
    518 F. Supp. 3d 1281 (D. Minn. 2021).............................................5, 11

*Lewis v. Casey*,
    518 U.S. 343 (1996)....................................................................3

*Matthews v. Baumhaft*,
    2007 WL 926050 (E.D. Mich. Mar. 28, 2007)....................................3, 4

*Nashel v. New York Times Co.*,
    2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)......................................7

*Snell v. G45 Secure Solutions (USA) Inc.*,
   424 F. Supp. 3d 892 (E.D. Cal. Dec. 19, 2019)..................................5, 11

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
   315 F.R.D. 220 (E.D. Mich. 2016) ......................................................12

*Wheaton v. Apple, Inc.*,
   2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ......................................7

*Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*,
   197 F. Supp. 3d 1334 (N.D. Fla. 2016) ............................................6, 9

*Zimmerman v. 3M Company*,
   542 F. Supp. 3d 673 (W.D. Mich. 2021) ..............................................4

**Rules**

Fed. R. Civ. P. 8 ............................................................... 3, 4, 19
Fed. R. Civ. P. 8(a)(2).............................................................3
Fed. R. Civ. P. 12(b)(6)........................................................5, 10
Fed. R. Civ. P. 26(b).............................................................12
Fed. R. Civ. P. 26(b)(1).........................................................12
Fed. R. Civ. P. 56(a).............................................................6

**Treatises**

Charles E. Clark, The New Federal Rules of Civil Procedure: The Last Phase—
   Underlying Philosophy Embodied in Some of the Basic Provisions of the New
   Procedure, 23 A.B.A.J. 976 (1937) ....................................................4

Plaintiffs Mary Lou Pett and eight other named plaintiffs (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, pursuant to Local Rule 7.1(h)(2), respectfully submit this Brief in Support of Plaintiffs' Motion for Reconsideration of the Court's Order Granting in Part and Denying in Part (ECF No. 44 (the "Order")) Defendant Publishers Clearing House's ("PCH" or "Defendant") Motion to Dismiss (ECF No. 25 ("Defendant's Motion")) the Second Amended Class Action Complaint (ECF No. 22 ("SAC")).

For the reasons discussed below, the Court should reconsider the portions of its Order granting Defendant's Motion with respect to unnamed third-parties and limiting discovery "to only the named Plaintiffs."

## STANDARD OF REVIEW

Under Eastern District of Michigan Local Rule 7.1(h)(2), a party may move for reconsideration of a non-final order. The applicable portion of the rule in this case is Rule 7.1(h)(2)(a) which requires Plaintiffs to show that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision."[1]

---

[1] It is undisputed that the Order was based on the record and law before the Court at the time of its prior decision. It is also clear that if the Court recognizes that it made a mistake related to its prior decision, then correcting that mistake would change the outcome of the prior decision (i.e., permitting Plaintiffs to redress PPPA-violative disclosures made to third parties other than LSC and Nextmark, and to

## **INTRODUCTION**

The Court held a hearing on Defendant's Motion on February 1, 2023. On May 23, 2023, the Court granted the Motion in part with respect to disclosures of Private Purchase Information ("PPI") to any third-parties not specifically identified in the SAC (finding such disclosures "speculative"), denied the Motion in part with respect to disclosures of PPI[2] to NextMark, Inc. ("NextMark") and List Services Corp. ("LSC"), and ordered that "any discovery shall be limited to only the named Plaintiffs." Order at 19-20, PageID.3393-94.

Plaintiffs respectfully submit that the Court committed a clear error in dismissing the case with respect to disclosures to unnamed third parties, and in ordering that discovery in this putative class action lawsuit be limited to only the PPPA claim of the named Plaintiffs. Applying the correct pleading and discovery standards will change the outcome of the prior decision. Accordingly, the Court should reconsider and amend the Order, as discussed below.

---

conduct discovery on issues relevant to class certification in addition to their own claim). Thus, the focus of this Motion is the "mistake" requirement.

[2]    The term "Private Purchase Information" as used herein is defined the same as in the SAC. *See* SAC ¶ 14 (defining "Private Purchase Information").

## ARGUMENT

**I.   Plaintiffs' Allegations Are Sufficient to State a Claim for Disclosures Made to Any Third Party, Specifically Named or Not**

The SAC's allegations are detailed and robust, easily clearing Rule 8's low bar.

"Rule 8(a)(2) of the Federal Rules requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573 (2007). Rule 8 is described as encompassing "relaxed pleading standards" because "the idea was not to keep litigants out of court but rather to keep them in." *Id*. at 575. Specific details related to a claim "would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial." *Id*.

Indeed, "[t]he Supreme Court has generally held that at the pleading stage, *general* factual allegations of injury resulting from the defendant's conduct may suffice and on a motion to dismiss, the court will presume that general allegations embrace those *specific* facts that are necessary to support the claim." *Matthews v. Baumhaft*, 2007 WL 926050, at *2 (E.D. Mich. Mar. 28, 2007) (emphasis added); *see also Lewis v. Casey*, 518 U.S. 343, 358 (1996) (same); *Cty. Rd. Ass'n of Michigan v. Governor*, 782 N.W.2d 784, 793 (Mich. App. 2010) (same). Still, "[a] complaint must contain either direct or inferential allegations representing all the material elements to sustain a recovery under some viable legal theory." *Matthews*,

3

2007 WL 926050, at *2. But, as noted in *Twombly*, to "'expect the proof of the case to be made through the pleadings . . . is really not their function. We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear, and so that a permanent judgment will result.'" *Twombly*, 550 U.S. at 575 (citing the "principal draftsman" of the Federal Rules: Charles E. Clark, The New Federal Rules of Civil Procedure: The Last Phase—Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure, 23 A.B.A.J. 976, 977 (1937)).

Pursuant to Rule 8's liberal pleading standard, Plaintiffs are not required to prove their claim with evidence at this time; rather, they must merely allege facts that plausibly suggest Defendant violated the PPPA. *See, e.g.*, *Gaines v. Nat'l Wildlife Fed'n*, 2023 WL 3186284, at *3 (E.D. Mich. May 1, 2023) (holding in a PPPA case, "the court must take care on a motion to dismiss to draw all reasonable inferences in plaintiff's favor and not to impose a heightened pleading standard where none is mandated by the Federal Rules of Civil Procedure or other authority.").

Nor are Plaintiffs required to specifically identify each third party recipient of their PPI with specificity or proof at the pleading stage. *See, e.g.*, *Zimmerman v. 3M Company*, 542 F. Supp. 3d 673, 681 (W.D. Mich. 2021) (Rule 8 pleading standard satisfied in class action where named plaintiffs alleged that they were exposed to

purportedly harmful chemical in drinking water, without alleging "whether any PFAS ha[d] been detected in their drinking water, and if so, how much"). At the pleading stage, Plaintiffs need only plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct. *Twombly*, 550 U.S. at 556. Furthermore, in the context of PPPA cases, where only the defendant knows exactly whom it disclosed the plaintiffs' detailed information to, requiring the plaintiffs to specifically name each potential data aggregator, data appender, data cooperative, list broker, advertiser, political organization, non-profit organization, or other third party who received their PPI from the defendant is a quintessential example of "an unnecessary burden of proof on the plaintiff[s] at the pleading stage." *Gaines*, WL 3186284, at *4.

And significantly, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original); *see also Snell v. G45 Secure Solutions (USA) Inc.*, 424 F. Supp. 3d 892, 904 (E.D. Cal. Dec. 19, 2019) (same, quoting *BBL, Inc.*, 809 F.3d at 325); *see also Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281, 1292 (D. Minn. 2021) ("On a Rule 12(b)(6) motion, the Court may only dismiss a claim, not part of a claim."); *In re Netopia, Inc., Sec. Litig.*, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005) (Rule 12(b)(6)

"should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint"); *Jones v. City of Los Angeles*, 2021 WL 6496719, at *6 n.10 (C.D. Cal. June 25, 2021) ("The Court cannot dismiss part of a claim.").[3]

In this case, the SAC adequately alleges that Defendant disclosed Plaintiffs' PPI to various groups of third parties during the relevant time period. Specifically, the SAC alleges that "[Defendant] rented, exchanged, and/or otherwise disclosed detailed information about Plaintiffs' purchases of written materials, sound recordings, and/or video recordings, including magazine subscriptions, to data aggregators, data appenders, data cooperatives, and list brokers, among others, which in turn disclosed their information to aggressive advertisers, political organizations, and non-profit companies." SAC ¶ 1; *id.* ¶¶ 18-26 ("[D]uring the relevant pre- July 31, 2016 time period, [Defendant] disclosed, without the requisite consent or prior notice, Plaintiff[s'] Private Purchase Information to data

---

[3]     Only at summary judgment may the Court dismiss part of a claim. "But that's because 'summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for 'partial summary judgment' and require parties to 'identify each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.'" *Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016) (quoting *BBL, Inc.*, 809 F.3d at 325 & Fed. R. Civ. P. 56(a)) (emphasis in original, brackets from the original omitted). "This makes sense—by the time summary judgment motions are submitted, discovery is complete and it is (or should be) apparent to the parties which legal theories are viable, so a court should be allowed to narrow the available theories for trial." *Winstead*, 197 F. Supp. 3d at 1341. *"But at this early stage, a defendant shouldn't be able to force a plaintiff to 'pick a theory' before all the facts are in by moving for partial dismissal of a claim." *Id.*

aggregators, data appenders, and/or data cooperatives, who then supplement[ed] that information with data from their own files. Moreover, during that same period, [Defendant] rented or exchanged mailing lists containing Plaintiff[s'] Private Purchase Information to third parties seeking to contact [Defendant's] customers, without first obtaining the requisite written consent from Plaintiff[s] or even giving [them] prior notice of the rentals, exchanges, and/or other disclosures."); *id.* ¶¶ 80-82.[4]

The SAC also identifies, by way of example but by no means limitation, two third-party recipients of Plaintiffs' PPI by name – one list broker, Nextmark, and one list manager/data appender, LSC. *See* SAC ¶ 2 ("For example, on the website of list broker NextMark, Inc. [], [Defendant] offers to provide renters access to the mailing list titled 'Publishers Clearing House Magazine Buyers Mailing List', which contains the Private Purchase Information of all 647,541 of [Defendant]'s U.S.-based magazine subscription purchasers[.]") (emphasis added); *id.* ¶ 63 ("During that time period, [Defendant] systematically rented, sold, exchanged, or otherwise disclosed all of its subscribers' Private Purchase Information to various data aggregators and appenders, data brokers, list managers, and other third parties,

---

[4]     These allegations show that the Plaintiffs' data was offered for sale during the relevant pre-July 31, 2016 period and that the defendant sold and disclosed that information during that time period. Thus, the facts of this case are distinguishable from the facts in *Nashel v. New York Times Co.*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), and *Wheaton v. Apple, Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

including but not limited to LSC.") (emphasis added). Moreover, as the SAC thoroughly explains, LSC and Nextmark are by no means the only third parties to whom Defendant disclosed Plaintiffs' and Class members' PPI during the relevant time period. To the contrary, as the Court recognized in its Order, the SAC alleges that numerous third parties received disclosures of Defendant's customers' PPI during the relevant time period, and that the alleged availability of Defendant's subscriber list for rental and exchange on Nextmark's and LSC's websites during the relevant time period plausibly suggests that Defendant was actively disclosing Plaintiffs' and its other customers' PPI to such third parties during the relevant time period. *See* Order at 4 n.3, PageID.3378 (noting "that the third parties to which Plaintiffs claim it disclosed PPI included: 'list brokers,' 'other consumer-facing businesses,' 'non-profit companies,' 'non-profit organizations seeking to raise awareness and solicit donations,' 'political organizations soliciting donations, votes, and volunteer efforts,' 'organizations soliciting monetary contributions, volunteer work, and votes,' 'direct-mail advertisers,' 'other third parties,' and 'anybody willing to pay for it'"); *id.* at 14, PageID.3388 (finding that "pages from LSC's website in effect during the relevant time period describe and offer testimonials from Defendant's marketing director concerning Defendant's practice of disclosing Defendant's customers' Private Purchase Information to LSC and others") (emphasis added). Finally, the proposed class definition broadly states that Plaintiffs

seek to represent a class who "had their Private Purchase Information disclosed to third parties by [Defendant] without consent" (SAC ¶ 67), which in no way limits disclosures to any named third parties in the SAC.

In light of these allegations, the Court correctly concluded that Plaintiffs have adequately stated a plausible claim for relief under the PPPA. *See* Order at 19, PageID.3393. Although the Court reached this conclusion by focusing on Plaintiffs' allegations concerning disclosures to Nextmark and LSC, the FAC's allegations concerning disclosures to other, presently unidentified recipients of Plaintiffs' and putative Class members' PPI are simply alternative theories of recovery for that same PPPA claim—and, if proven, are no less actionable than disclosures Defendant made to LSC or Nextmark. *See Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016) ("[W]hen two theories based on the same facts—and part of a single claim for relief—are presented in a complaint, and a defendant only challenges the sufficiency of the complaint as to one of the theories, the claim cannot be dismissed. And the challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage.") (citing *BBL, Inc.*, 809 F.3d at 325); *see also, e.g.*, *Campbell v. D.C.*, 972 F. Supp. 2d 38, 46 n.5 (D.D.C. 2013) ("[B]ecause Ms. Campbell's claim survives the motion to dismiss stage on at least a 'stigma or disability' theory, the Court need not address at this stage whether the

complaint alleges that Defendants made a defamatory statement to support a 'reputation-plus' theory as well. The Court notes that the allegations in the complaint . . . may support such a theory, and Ms. Campbell may have too hastily focused on a 'stigma or disability' theory. Regardless, she may take discovery under both theories.").

Thus, upon finding that Plaintiffs had stated a plausible claim for relief under the PPPA, the Court should have simply denied the motion in its entirety, *see Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) (explaining that "a complaint may contain alternative theories, and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint")—just like every other court has done upon finding a PPPA plaintiff's claim for relief plausible. *See, e.g.*, *Gaines*, 2023 WL 3186284, at *1–2 (denying the defendant's entire motion to dismiss where the plaintiff's allegations as to third-party disclosures of her minor son's private reading information related only to NextMark and other ***unspecified*** third-parties); *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark

or other data-mining companies passes the threshold of plausibility.")[5]; *Batts v. Gannett Co.*, 2023 WL 3143695, at *4–5 (E.D. Mich. Mar. 30, 2023); *Briscoe v. NTVB Media Inc.*, 2023 WL 2950623, at *6–7, 15 (E.D. Mich. Mar. 3, 2023) (report and recommendation by Altman, J.). By instead dismissing part of Plaintiffs' PPPA claim (as to any disclosures to third parties other than LSC or Nextmark)—which it was powerless to do—the Court committed clear legal error. *See BBL, Inc.*, 809 F.3d at 325; *Kruger*, 518 F. Supp. 3d at 1292; *Snell*, 424 F. Supp. 3d at 904; *In re Netopia, Inc.*, 2005 WL 3445631, at *3; *Jones*, 2021 WL 6496719, at *6. To correct the error, the Court should grant reconsideration and deny Defendant's motion to dismiss in its entirety.

Even if the Court has the power to dismiss part of a claim—and it does not—the Court's partial dismissal of Plaintiffs' PPPA claim was nonetheless unwarranted here, particularly since the specific names of each of the various recipients of Plaintiffs' PPI, including all of the downstream entities to whom LSC and Nextmark transmitted this data, is exclusively within Defendant's knowledge and need not (and cannot possibly) be alleged by Plaintiffs to state a claim. Defendant's disclosures to other, presently unidentified recipients of Plaintiffs' and putative Class members' PPI also bear on the extent of damages and the size and composition of the putative

---

[5]      The *Horton* court makes it clear that allegations of disclosures to unspecified, or simply "other" third-parties, passes the threshold of plausibility at this stage. *Id.*

11

Class—matters that are plainly discoverable under the Federal Rules. Fed. R. Civ. P. 26(b)(1); *see also State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) ("Rule 26(b) applies equally to discovery of nonparties"); *Blumberg v. Ambrose*, 2014 WL 4988380, at *4 (E.D. Mich. Oct. 7, 2014) (permitting discovery of third-parties with respect to quantifying alleged damages).

Defendant's disclosures to LSC illustrate why it was improper for the Court limit the actionability of Plaintiffs' PPPA claim solely to Defendant's disclosures of PPI to the two third-party recipients identified by name in the SAC. The SAC alleges that LSC acted as both Defendant's "list manager" (who rented and exchanged Defendant's subscriber lists to other third parties on Defendant's behalf), as well as Defendant's "data appender" (who received Plaintiffs' and Class members' PPI from Defendant and then appended additional personal and demographic information pertaining to each person to "enhance" the value of their PPI before returning the enhanced data to Defendant). SAC ¶¶ 5, 8; *see also* SAC ¶ 10 (alleging that "for the entire duration of the pre-July 31, 2016 time period, [Defendant] was actively renting, selling, exchanging, and otherwise disclosing all of its customers' Private Purchase Information (including Plaintiffs' and all Class members' Private Purchase Information) to LSC for management and appending, as well as to numerous other third party renters and exchangers of this data, on a systematic and continuous basis

12

for the duration"). There is no question that Defendant violated the PPPA when it disclosed Plaintiffs' and Class members' PPI to LSC for data "appending" services during the relevant time period. *See* SAC ¶ 8 (alleging that, during the relevant time period, LSC "also acted as [Defendant]'s data appender by continuously using [Defendant]'s customer database (transmitted to it by [Defendant] on at least as frequently as a monthly basis) to 'enhance' [Defendant]'s consumer data files and LSC's other data files"); *id.* ¶ 58 ("[Defendant] discloses its customers' Private Purchase Information to data aggregators and appenders, who then supplement that information with additional sensitive private information about each [of its] customer[s], including his or her gender."); *see also, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 201 (S.D.N.Y. 2017) (holding that defendant's disclosures of the plaintiff's PPI to a third party, "to append demographic and other data onto records in its customer marketing database[,]" violated the PPPA as a matter of law, and granting summary judgment in favor of the plaintiff).

Moreover, LSC is likely to have been acting as Defendant's agent when it performed work as Defendant's list manager[6], including when it disclosed

---

[6]    *See* SAC ¶¶ 5–6 (alleging LSC served as Defendant's "list manager" during relevant time period); *id.* ¶¶ 5–7 (alleging that LSC, upon receiving Defendant's subscriber list as its "list manager," "then systematically rented, exchanged, and otherwise disclosed to various third parties on [Defendant]'s behalf" during the relevant time period); *see also id.* ¶ 9 (reciting "the following 'testimonial' that Linda Gewirtz, Senior Marketing Director for Publisher's Clearing House, provides on the current version of LSC's website: 'LSC Marketing Group has been a great partner,

customers' PPI on Defendant's behalf (and at Defendant's direction) to third-party renters and exchangers of that data during the relevant time period. *See, e.g.*, *Boelter*, 269 F. Supp. 3d at 200 (company found to be defendant's agent in PPPA action where the company "receives and inputs information from Defendant, processes and organizes that data, provides analytical tools to access and use the information, and executes Defendant's instructions with respect to certain external transmissions"). Any PPPA-violative disclosures made by LSC, acting at Defendant's direction as its list-manager agent, will be deemed to have been made by Defendant, the principal. *See, e.g.*, *Boelter*, 269 F. Supp. 3d at 201 n.12 (disclosures to "third parties . . . made by [defendant's agent] on behalf of [d]efendant" constituted PPPA violations by the defendant). Thus, because Defendant will likely be found to have violated the PPPA whenever LSC disclosed Plaintiff's and Class members' PPI to renters and exchangers of this data on Defendant's behalf (as its list manager) during the relevant time period, Plaintiffs must also be permitted to conduct discovery to identify the third parties to whom LSC transmitted their PPI during the relevant time period.

An earlier, published PPPA case is also instructive on this point. In *Cain v.*

---

managing our file since it was put on the market in 2002. They have built a strong list rental program for [Defendant] and we would not trust the management of our file to anyone else'"); *id.* ¶ 59 (alleging that Defendant rents its subscribers' PPI "to other data aggregators and appenders, other consumer-facing businesses, non-profit organizations seeking to raise awareness and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts").

*Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013), also a PPPA[7] action, the court did not require the plaintiffs to identify the third parties to whom their PPI was allegedly disclosed. Instead, the *Cain* court found that it is enough that the plaintiffs "affirmatively state that they 'never consented, in any way, to Redbox's disclosure of their Personal Viewing Information to third parties.'" *Cain*, 981 F. Supp. 2d at 686–87. Not only are the third-party vendors never mentioned by name in *Cain*, but the plaintiffs' complaint in the case never identifies a <u>single</u> third-party vendor by name. *See Cain*, Complaint, 2:12-cv-15014 at ¶ 43 (E.D. Mich.) (in which the putative class is defined as "All Michigan residents who had their Personal Viewing Information disclosed by Redbox to a third party 'service support' vendor or any other third party without written consent.")

Accordingly, the Court should reconsider and amend its Order to permit Plaintiffs to seek redress for any disclosures of their (and Class members') PPI to any third party.

## II.     The Order Mistakenly Finds That Plaintiffs' Allegations Are Not Sufficient With Respect to all Third-Parties.

Despite Plaintiffs' well-pled allegations detailing Defendant's disclosures to various types of third-party data companies and renters and exchangers—including without limitation LSC and Nextmark—the Court's Order mistakenly adopts

---

[7]     The *Cain* court refers to the PPPA as the Michigan Video Rental Privacy Act ("VRPA"). *Cain*, 981 F. Supp. 2d at 677.

Defendant's position that Plaintiffs have the burden of specifically alleging the names of all of the third-parties to whom Defendant disclosed Plaintiffs' and Class members' PPI during the relevant time period. Order at 18, 20, PageID.3392, 3394.

According to the Court, "Plaintiffs had the burden of alleging the entities to which Defendant allegedly was disclosing the lists/personal information. To conclude otherwise would relieve Plaintiffs of any obligation to plead anything that would identify the scope of Defendant's disclosures." Order at 18, PageID.3392. And even though the SAC alleges that Defendant made these disclosures without providing notice to, or obtaining consent from, Plaintiff or any of its other customers—such that the identities of all of the third-party recipients of these disclosures are presently known only to Defendant, *see* SAC ¶¶ 18–26, 62, 86–87— the Court nevertheless found that this information void "does not change the Court's analysis, as it is not relevant to whom Defendant allegedly disclosed prohibited information." Order at 19. This was clear error.

For one thing, the SAC does, in fact, "identify the scope of Defendant's disclosures" by alleging that Defendant, either directly or through one or more intermediaries acting on its behalf, including LSC, "disclosed Plaintiffs' PPI to "data aggregators, data appenders, and/or data cooperatives," and "rented or exchanged" such data "to third parties," during the relevant time period. Order at 18-19, PageID.3392-93 (quoting SAC ¶¶ 18-26). The Order itself recites the SAC's

allegations that LSC advertised the availability of, and in fact rented and exchanged, Defendant's subscribers' PPI to various third parties on Defendant's behalf. *See* Order at 7, PageID.3381 (reciting SAC's allegation that "LSC's website advertised for rental the PCH customer list (and all of the related 'selects' available for purchase for each customer, in addition to every customer's Private Purchase Information)" and that "copies of the data cards on LSC's website advertis[ed] the availability of the PCH 'Masterfile'") (quoting SAC ¶¶ 6–7); *id.* at 9, PageID.3383 (noting the SAC alleges "a press release . . . reflecting that Defendant had selected LSC to 'manage' Defendant's customer data 'files' for rental, sale, and exchange to third parties") (quoting SAC ¶ 5 & Ex. C to SAC). Thus, as the Order itself recognizes, the SAC alleges facts showing that Defendant disclosed Plaintiffs' PPI to various third-party data companies, including to numerous other downstream renters and exchangers through its list manager LSC. *See also, e.g.*, Order at 14, PageID.3388 (recognizing that "pages from LSC's website in effect during the relevant time period describe and offer testimonials from Defendant's marketing director concerning Defendant's practice of disclosing Defendant's customers' Private Purchase Information to LSC and others, as discussed above") (emphasis added). There was no basis for the Court to dismiss Plaintiffs' PPPA claim arising from such disclosures.

Moreover, given that Defendant failed to notify Plaintiffs or Class members that they would disclose their PPI to third-parties, much less the names of the third-

parties to whom this data would be disclosed, Plaintiffs' inability to specifically identify each recipient of their PPI in no way detracts from the plausibility of their allegations that such disclosures in fact occurred. As the Court recognized throughout its Order, the SAC alleges that LSC, acting on Defendant's behalf as its list-manager agent, advertised the availability of and then actually disclosed Plaintiffs' PPI to various third parties who rented and exchanged for this data during the relevant time period, and that Defendant also directly transmitted Plaintiffs' PPI to various other data companies during the same time period. *See* Order generally. Based on these factual allegations, which must be accepted as true, there was no basis for the Court to conclude that only disclosures to LSC and Nextmark are actionable or discoverable in this case. Plaintiffs should be permitted to obtain discovery that reveals the identities of, and obtain relief to redress Defendant's disclosures to, all of the third-party recipients of their PPI—recipients that are adequately alleged to exist but cannot be presently identified by name.

The Order is truly the first of its kind. None of the courts that have presided over any of the dozens of PPPA cases filed over the past eight years have limited the actionability of a plaintiff's PPPA claim to a narrow subset of the defendant's disclosures, as this Court did in the Order. In fact, discovery in PPPA cases often reveals that a defendant violated the statute by disclosing PPI to third-parties that the plaintiff had not identified in the operative complaint—and disclosures to these

previously unidentified third-parties have been found no less actionable than disclosures to third-parties that were previously identified in the complaint. *See Boelter*, 269 F. Supp. 3d at 207 (in PPPA action, granting summary judgment in plaintiff's favor "as to Defendant's disclosures to Experian and Company 3," even though neither Experian nor Company 3 were identified in the operative complaint on file at the time those disclosures were discovered). And for good reason: the liberal Rule 8 pleading standard does not require such specificity. The pleading standard imposed by the Court's Order, on the other hand, improperly requires factual detail that is within the exclusive knowledge of the defendant, effectively "hold[ing] [Plaintiffs] to an inapplicable evidentiary standard at the pleading stage." *Gaines*, 2023 WL 3186284, at *5.

Simply put: in light of the Court's conclusion that Plaintiffs have adequately stated a claim for violation of the PPPA, Plaintiffs are entitled to seek discovery concerning, and obtain relief under the PPPA as a result of, any disclosure of their PPI, to any third party. The Court clearly erred in holding otherwise. Accordingly, the Court should reconsider and amend its Order to permit Plaintiffs to seek redress for any disclosures of their (and Class members') PPI to any third party.

### III.   The Court Also Erred by Limiting Discovery "to Only the Named Plaintiffs"

Finally, the Court erred in ordering that discovery in this putative class action lawsuit be "limited to only the named Plaintiffs." *See* Order at 20, PageID.3394.

Because this is a putative class action, Plaintiffs are entitled to obtain the discovery needed to demonstrate that Rule 23's requirements are satisfied. *See* Fed. R. Civ. P. 23. Thus, discovery cannot be "limited to only the named Plaintiffs."

To the extent the Court intended for its Order to bifurcate discovery between class-related issues and individual merits issues, this too was improper and should be corrected. For one thing, neither party requested that discovery be bifurcated, and there is no reason why discovery should not proceed in the ordinary course in this case. In PPPA cases in particular, issues pertaining to the named Plaintiffs almost entirely overlap with the issues pertaining to the putative class. For example, a disclosure of PPI by the Defendant would invariably have been made in the form of a file that contained not just the Plaintiffs' PPI, but all of the other Class members' PPI as well. There is thus no practical reason to bifurcate merits discovery from class discovery. And in the few PPPA cases where discovery has been bifurcated and conducted in phases, Plaintiffs' counsel's experience is that this led to inefficiencies, discovery disputes, and duplicative discovery efforts.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider and amend the Order to correct its dismissal of Plaintiffs' PPPA claim with respect to disclosures to unnamed third-parties and its restriction on Plaintiffs obtaining discovery concerning issues of class certification.

Dated: June 6, 2023

Respectfully submitted,

*/s/ E. Powell Miller*

E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

Respectfully submitted,

<u>*/s/ E. Powell Miller*</u>

E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com