## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY LOU PETT; KATHLEEN FICK-GEE; DIANE BRYCE; PATTI DELVALLE; MICHELE HOLCOMB; KIM READUS; ALICE REESE; ERIKA VAN ALLER; and LINDA WHITE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PUBLISHERS CLEARING HOUSE, INC., <br><br> Defendant. | Civil Action No. 2:22-CV-11389-DPH-EAS <br><br> **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Complaint Filed:     June 22, 2022 <br> Complaint Served:  June 30, 2022 |

Pursuant to Federal Rules of Civil Procedure 12(a)(4)(A), Defendant Publishers Clearing House, LLC[1] ("PCH") hereby files its Answer to the Second Amended Class Action Complaint filed by Plaintiffs Mary Lou Pett, Kathleen Fick-Gee, Diane Bryce, Patti DelValle, Michele Holcomb, Kim Readus, Alice Reese, Erika Van Aller, and Linda White (collectively, "Plaintiffs") on November 8, 2022, [Dkt. No. 22] ("SAC").

On May 23, 2023, the Court issued an order on PCH's motion to dismiss, in which the Court granted in part and denied in part the Motion to Dismiss.

---

[1] Erroneously sued as Publishers Clearing House, Inc.

Specifically, the Court denied PCH's Motion to Dismiss "with respect to Plaintiff's claims of disclosures to NextMark and LSC" but granted PCH's Motion to Dismiss "with respect to any third-parties because such third-parties are not specifically identified and are merely speculative." [Dkt. No. 44, p. 20.] Furthermore, on July 30, 2024, the Court issued an order denying Plaintiffs' Motion for Reconsideration of the Court's Motion to Dismiss Order. [Dkt. No. 58.] Therefore, in answering Plaintiffs' SAC, PCH shall, consistent with the Court's order, only respond to claims of disclosure as they relate to either NextMark and/or LSC.

Although Plaintiff does not specifically define the "Class Period" in the SAC, Plaintiff argues that "[t]he applicable six-year limitation period was tolled for 101 days pursuant to Executive Orders issued by the Governor of Michigan during the COVID-19 pandemic." [Dkt. No. 22, ¶ 1, n. 2.] In their Opposition to PCH's Motion to Dismiss, Plaintiffs argued that "the 'relevant pre-July 31, 2016 time period" was "between March 14, 2016 and July 30, 2016." [Dkt. No. 27, p. 3.] Although PCH does not agree with Plaintiffs' argument and expressly reserves its right to contest same going forward, for purposes of this Answer, PCH has interpreted "relevant pre-July 31, 2016 time period," as used in the SAC, to mean between March 14, 2016 and July 31, 2016.

## ANSWER TO SAC[2]

The first paragraph in the SAC contains legal conclusions to which no response is required.  To the extent the first paragraph in the SAC is intended to include any allegations of fact, PCH admits that Plaintiffs, "by and through their attorneys of record," filed the SAC on their own behalf and, purportedly, on behalf of "all others similarly situated."  As to the remaining allegations in the first paragraph of the SAC, if any, PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in the first paragraph of the SAC and, therefore, denies the allegations.

## INTRODUCTION

1.      PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that they "have received a barrage of unwanted junk mail" and, therefore, denies that allegation.  PCH denies that, "[b]y renting, exchanging, and/or otherwise disclosing Plaintiffs' Private Purchase Information (defined below) during the relevant pre-July 31, 2016 time period, PCH violated Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id*. § 5, added by H.B. 4694,

---

[2] Footnote 1 in the SAC contains legal conclusions and citations to which no response is required. To the extent Footnote 1 is intended to include any allegations of fact, PCH admits that Plaintiffs filed the SAC within 21 days of PCH filing its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") and admits that Plaintiffs filed the FAC with PCH's written consent.

85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the 'PPPA')."[34] Any additional allegations in Paragraph 1 are not limited to either List Services Corporation, Inc. ("LSC") or NextMark, Inc. ("NextMark") and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner v. French*, No. 07–14694, 2009 WL 103977, at *1 (E.D. Mich. Jan. 14, 2009) (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr v. Goerdel*, Case No. 20-2037-SAC, 2021 WL 3074115, at *4 (D. Kan. June 25, 2021) (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian v. Art Cap. Corp.*, 639 F. Supp. 702, 704 (S.D.N.Y. 1986) (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . .

---

[3] Footnote 2 in the SAC contains legal conclusions and citations to which no response is required.

[4] Footnote 3 in the SAC contains legal conclusions and citations to which no response is required.

answer only those portions of the Amended Complaint which have not already been dismissed").

2.      PCH denies that "[d]ocumented evidence confirms these facts." Because Plaintiffs do not include the url for the NextMark screenshot attached to the SAC as Exhibit A, PCH has been unable to verify the NextMark screenshot attached to the SAC as Exhibit A.  PCH denies that it "offers to provide renters access to the mailing list titled 'Publishers Clearing House Magazine Buyers Mailing List', which contains the Private Purchase Information of all 647,541 of PCH's U.S.-based magazine subscription purchasers at a base price of '$100.00/M [per thousand],' (i.e., 10 cents apiece), as shown in the screenshot below[.]"

3.      PCH denies that it "also offers to provide renters access to the mailing list titled 'Publishers Clearing House Book, Music & Video Buyers Mailing List', which contains the Private Purchase Information of 1,429,511 of PCH's U.S.-based book, music, and video purchasers at a base price of '$100.00/M [per thousand],' (i.e., 10 cents apiece), as shown in the screenshot below[.]" Because Plaintiffs do not include the url for the NextMark screenshot attached to the SAC as Exhibit B, PCH has been unable to verify the NextMark screenshot attached to the SAC as Exhibit B.

4.      Because Plaintiffs do not include the urls for the NextMark screenshots attached to the SAC as Exhibits A and B, PCH has been unable to

verify the NextMark screenshots attached to the SAC as Exhibits A and B and, therefore, has been unable to determine what these purported "lists" actually include.  Accordingly, PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that "[t]he lists advertised for sale in the 'data cards' shown above in paragraphs 2 and 3 (and all of the 'data cards' attached as exhibits to this pleading) include, inter alia, the full names and addresses, of each person who purchased a product from PCH and the types, titles, and genres of the products (including of the written materials, video records, and sound recordings) that each of them purchased, as did the same lists advertised by and in fact disclosed by PCH throughout the relevant pre-July 31, 2016 time period[.]" Nevertheless, PCH denies that it disclosed "the full names and addresses, of each person who purchased a product from PCH and the types, titles, and genres of the products (including of the written materials, video records, and sound recordings) that each of them purchased" to NextMark.

5.     PCH admits that "in March 2002, PCH announced that it had named List Services Corp. ('LSC') to serve as its list manager, effective April 1, 2002." As to the allegations in Paragraph 5 of the SAC, all of which are quotes from an article posted online by an entity other than PCH, PCH states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that the quoted statement was included in the cited article and,

therefore, denies the allegation.[5] Any additional allegations in Paragraph 5 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

6.      PCH denies that "[f]rom April 2002 through present day, and for the entire duration of the pre-July 31, 2016 time period, PCH continually and

---

[5] Footnote 4 in the SAC merely includes another citation to an online article.  As that article was posted by an entity other than PCH, PCH states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that the quoted statement was included in the cited article and, therefore, denies the allegation.

systematically disclosed – at least as frequently as once a month – all of its customers' Private Purchase Information via list rentals, exchanges, and transfers to LSC…." PCH is not aware of what, if anything, LSC's "website advertised for rental" in 2014 and, therefore, PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that "in 2014, LSC's website advertised for rental the PCH customer list (and all of the related 'selects' available for purchase for each customer, in addition to every customer's Private Purchase Information)." Accordingly, PCH denies that allegation. PCH denies that "the arrangement between PCH and LSC has called for PCH to transmit its entire customer database to LSC on a monthly basis, which LSC has then systematically rented, exchanged, and otherwise disclosed to various third parties on PCH's behalf." Any additional allegations in Paragraph 6 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing

plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

      7.     PCH denies that it "transmitted to LSC" its "entire customer base" during "the relevant pre-July 31, 2016 time period."  PCH also denies that "during the relevant pre-July 31, 2016 time period," PCH was disclosing its "entire customer database to LSC…."  As to Plaintiffs' allegation that PCH "admitted on its own website, during the relevant pre-July 31, 2016 time period, that '[f]rom time to time we may share or exchange marketing information about the consumers who respond to our offers with other companies so they may contact you about products and services that may interest you," PCH states the statements "[f]rom time to time we may share or exchange marketing information about the consumers who respond to our offers with other companies so they may contact you about products and services that may interest you" and "Companies want to reach people who are most likely to be interested in what they have to offer. That's why Publishers Clearing House, like all major direct mail marketers, rents and buys relevant mailing lists to help us find prospective customers -- instead of just sending mail at random" were included on its website.  As to the allegations in

Paragraph 7, that relate to third-party representations, PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations and, therefore, denies them. Any additional allegations in Paragraph 7 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

8.     PCH denies Plaintiffs' allegation that "from 2002 through the present, including throughout the entire pre-July 31, 2016 time period, LSC has also acted as PCH's data appender by continuously using PCH's customer database

(transmitted to it by PCH on at least as frequently as a monthly basis) to 'enhance' PCH's consumer data files and LSC's other data files, including both its own consumer data files and other clients' consumer data files that it managed, by appending to the files other 'demographic, ethnic, lifestyle, . . . and e-mail' information about each consumer listed in these files — which made PCH's list and LSC's other proprietary and client lists more valuable and allowed LSC (on PCH's and on each of its other customers' behalf) to rent PCH's lists to third parties for more money and to exchange PCH's lists to third parties on more favorable terms."  As to the remaining allegations in Paragraph 8 of the SAC, all of which relate to statements made by third parties, PCH states that the statements speak for themselves.

9.    PCH denies that it "was continuously and systematically disclosing its entire customer database to LSC (and to innumerable other downstream entities who exchanged or rented PCH's customer database and 'enhanced' customer database), in the manner alleged herein[.]" As to the remaining allegations in Paragraph 9 of the SAC, all of which relate to quotes from Linda Gerwitz, PCH states that the statements speak for themselves.

10.    PCH denies Plaintiffs' allegations that, "for the entire duration of the pre-July 31, 2016 time period, PCH was actively renting, selling, exchanging, and otherwise disclosing all of its customers' Private Purchase Information (including

Plaintiffs' and all Class members' Private Purchase Information) to LSC for

management and appending" "on a systematic and continuous basis for the

duration (at least as frequently as once a month)." Any additional allegations in

Paragraph 10 are not limited to either LSC or NextMark and, therefore, have been

dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting

defendants' motion to strike "those portions of Plaintiff's amended complaint that

allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL

3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second

amended complaint don't accurately reflect the claims that remain and [noting that]

plaintiff hasn't taken Judge Crow's prior rulings into account when filing this

motion and submitting his second proposed amended complaint" and therefore

striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F.

Supp. at 704 (stating that it would be "unfair to require defendants to answer

plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear

majority of the claims it asserts have already been dismissed" and directing

defendants to "simply . . . answer only those portions of the Amended Complaint

which have not already been dismissed").

11.    As to Plaintiffs' allegation that they "saw a dramatic uptick of junk

mail in their mailboxes over the same time period," PCH is without knowledge or

information sufficient to form a belief as to the truth or falsity of that allegation

and, therefore, denies that allegation. Any additional allegations in Paragraph 11 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

12.     PCH states that the statutory text of the PPPA quoted by Plaintiff is public knowledge to which no response is required.  As to the remaining allegations in Paragraph 12 of the SAC, PCH denies those allegations.

13.     PCH denies that it "intentional[ly] and unlawful[ly] disclos[ed]…its customers' Private Purchase Information in violation of the PPPA."

## NATURE OF THE CASE

14.     PCH also denies that it "continuously and systematically engaged in these same practices (disclosing its entire database of its subscribers' Private Purchase Information to LSC and other third parties, at least as frequently as once a month) throughout the entire relevant pre-July 31, 2016 time period." Any additional allegations in Paragraph 14 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

15.    The allegations in Paragraph 15 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

16.    The allegations in Paragraph 16 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims

that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

17.    The allegations in Paragraph 17 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been

dismissed" and directing defendants to "simply . . . answer only those portions of
the Amended Complaint which have not already been dismissed").

## PARTIES

18.    PCH has no record of Pett having purchased anything from PCH prior
to July 31, 2016.  Accordingly, PCH denies that "Plaintiff Pett purchased written
materials, sound recordings, and/or video recordings sold by PCH, including but
not limited to subscriptions to magazines, prior to July 31, 2016 (including during
the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a
citizen of, and present in Michigan, Plaintiff Pett purchased such products,
including such magazine subscriptions, directly from PCH."  PCH also denies the
following allegations because PCH has no record of Pett purchasing anything from
PCH prior to July 31, 2016: (1) "[p]rior to and at the time Plaintiff Pett purchased
such products (including magazine subscriptions) from PCH, PCH did not notify
Plaintiff Pett that it discloses the Private Purchase Information of its customers,
and Plaintiff Pett has never authorized PCH to do so"; (2) "Plaintiff Pett was never
provided any written notice that PCH rents, exchanges, or otherwise discloses its
customers' Private Purchase Information, or any means of opting out"; (3) "[s]ince
purchasing products (including magazine subscriptions) from PCH, and during the
relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite
consent or prior notice, Plaintiff Pett's Private Purchase Information to data

aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Pett's Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from Plaintiff Pett or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Pett's remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Auburn Hills, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

19.    PCH has no record of Fick-Gee having purchased from PCH, prior to July 31, 2016, any "written materials, sound recordings, and/or video recordings." Accordingly, PCH denies that "Plaintiff Fick-Gee purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a citizen of, and present in Michigan, Plaintiff Fick-Gee purchased such products, including such magazine subscriptions, directly from PCH."  PCH also denies the following allegations because PCH has no record of Fick-Gee having purchased from PCH, prior to July 31, 2016, any "written materials, sound recordings, and/or video

recordings": (1) "[p]rior to and at the time Plaintiff Fick-Gee purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff Fick-Gee that it discloses the Private Purchase Information of its customers, and Plaintiff Fick-Gee has never authorized PCH to do so"; (2) "Plaintiff Fick-Gee was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private Purchase Information, or any means of opting out"; (3) "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff Fick-Gee's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Fick-Gee's Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from  Plaintiff Fick-Gee or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Fick-Gee's remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Freeland, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

20.     PCH has no record of Bryce having purchased anything from PCH prior to July 31, 2016. Accordingly, PCH denies that "Plaintiff Bryce purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a citizen of, and present in Michigan, Plaintiff Bryce purchased such products, including such magazine subscriptions, directly from PCH."  PCH also denies the following allegations because PCH has no record of Bryce having purchased anything from PCH prior to July 31, 2016: (1) "[p]rior to and at the time Plaintiff Bryce purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff Bryce that it discloses the Private Purchase Information of its customers, and Plaintiff Bryce has never authorized PCH to do so"; (2) "Plaintiff Bryce was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private Purchase Information, or any means of opting out"; (3) "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff Bryce's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or

exchanged mailing lists containing Plaintiff Bryce's Private Purchase Information
to third parties seeking to contact PCH customers, without first obtaining the
requisite written consent from  Plaintiff Bryce or even giving her prior notice of
the rentals, exchanges, and/or other disclosures."  As to Bryce's remaining
allegation that she "is a natural person and citizen of the State of Michigan and
resides in Lapeer, Michigan[,]" PCH is without knowledge or information
sufficient to form a belief as to the truth or falsity of that allegation and, therefore,
denies that allegation.

21.    PCH admits that, prior to July 31, 2016, someone purchased, under
the name of Patti DelValle, "written materials, sound recordings, and/or video
recordings."  PCH is without knowledge or information sufficient to form a belief
as to the truth or falsity of Plaintiffs' allegation that "[w]hile residing in, a citizen
of, and present in Michigan, Plaintiff DelValle purchased such products, including
such magazine subscriptions, directly from PCH" and, therefore, denies the
allegation. PCH denies that "[p]rior to and at the time Plaintiff DelValle purchased
such products (including magazine subscriptions) from PCH, PCH did not notify
Plaintiff DelValle  that it discloses the Private Purchase Information of its
customers, and Plaintiff DelValle has never authorized PCH to do so" and that
"Plaintiff DelValle was never provided any written notice that PCH rents,
exchanges, or otherwise discloses its customers' Private Purchase Information, or

any means of opting out."  PCH also denies that  "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff DelValle's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files" and that "during that same period, PCH rented or exchanged mailing lists containing Plaintiff DelValle's Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from  Plaintiff DelValle or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to DelValle's remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Ironwood, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

22.    PCH has no record of Holcomb having purchased from PCH, prior to July 31, 2016, any "written materials, sound recordings, and/or video recordings." Accordingly, PCH denies that "Plaintiff Holcomb purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a citizen of,

and present in Michigan, Plaintiff Holcomb purchased such products, including such magazine subscriptions, directly from PCH."  PCH also denies the following allegations because PCH has no record of Holcomb having purchased from PCH, prior to July 31, 2016, any "written materials, sound recordings, and/or video recordings": (1) "[p]rior to and at the time Plaintiff Holcomb purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff Holcomb that it discloses the Private Purchase Information of its customers, and Plaintiff Holcomb has never authorized PCH to do so"; (2) "Plaintiff Holcomb was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private Purchase Information, or any means of opting out"; (3) "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff Holcomb's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Holcomb's Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from  Plaintiff Holcomb or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Holcomb's remaining allegation that

she "is a natural person and citizen of the State of Michigan and resides in Dorr,

Michigan[,]" PCH is without knowledge or information sufficient to form a belief

as to the truth or falsity of that allegation and, therefore, denies that allegation.

23.    PCH has no record of Readus having purchased anything from PCH

prior to July 31, 2016. Accordingly, PCH denies that "Plaintiff Readus purchased

written materials, sound recordings, and/or video recordings sold by PCH,

including but not limited to subscriptions to magazines, prior to July 31, 2016

(including during the relevant pre-July 31, 2016 time period)" and denies that

"[w]hile residing in, a citizen of, and present in Michigan, Plaintiff Readus

purchased such products, including such magazine subscriptions, directly from

PCH."  PCH also denies the following allegations because PCH has no record of

Readus having purchased anything from PCH prior to July 31, 2016: (1) "[p]rior to

and at the time Plaintiff Readus purchased such products (including magazine

subscriptions) from PCH, PCH did not notify Plaintiff Readus that it discloses the

Private Purchase Information of its customers, and Plaintiff Readus has never

authorized PCH to do so"; (2) "Plaintiff Readus was never provided any written

notice that PCH rents, exchanges, or otherwise discloses its customers' Private

Purchase Information, or any means of opting out"; (3) "[s]ince purchasing

products (including magazine subscriptions) from PCH, and during the relevant

pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or

prior notice, Plaintiff Readus' Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Readus' Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from  Plaintiff Readus or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Readus' remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Detroit, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

24.    PCH has no record of Reese having purchased anything from PCH prior to July 31, 2016. Accordingly, PCH denies that "Plaintiff Reese purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a citizen of, and present in Michigan, Plaintiff Reese purchased such products, including such magazine subscriptions, directly from PCH."  PCH also denies the following allegations because PCH has no record of Reese having purchased anything from PCH prior to July 31, 2016: (1) "[p]rior to

and at the time Plaintiff Reese purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff Reese that it discloses the Private Purchase Information of its customers, and Plaintiff Reese has never authorized PCH to do so"; (2) "Plaintiff Reese was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private Purchase Information, or any means of opting out"; (3) "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff Reese's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files"; and (4) "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Reese's Private Purchase Information to third parties seeking to contact PCH customers, without first obtaining the requisite written consent from  Plaintiff Reese or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Reese's remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Monroe, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

25.    PCH admits that, prior to July 31, 2016, someone purchased, under the name of Erika Van Aller, "written materials, sound recordings, and/or video recordings."  PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that "[w]hile residing in, a citizen of, and present in Michigan, Plaintiff Van Aller purchased such products, including such magazine subscriptions, directly from PCH" and, therefore, denies the allegation. PCH denies that "[p]rior to and at the time Plaintiff Van Aller purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff Van Aller that it discloses the Private Purchase Information of its customers, and Plaintiff Van Aller has never authorized PCH to do so" and that "Plaintiff Van Aller was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private Purchase Information, or any means of opting out."  PCH also denies that  "[s]ince purchasing products (including magazine subscriptions) from PCH, and during the relevant pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or prior notice, Plaintiff Van Aller's Private Purchase Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files" and that "during that same period, PCH rented or exchanged mailing lists containing Plaintiff Van Aller's Private Purchase Information to third parties seeking to contact PCH customers, without first

obtaining the requisite written consent from  Plaintiff Van Aller or even giving her prior notice of the rentals, exchanges, and/or other disclosures."  As to Van Aller's remaining allegation that she "is a natural person and citizen of the State of Michigan and resides in Zeeland, Michigan[,]" PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of that allegation and, therefore, denies that allegation.

26.     PCH has no record of White having purchased anything from PCH prior to July 31, 2016. Accordingly, PCH denies that "Plaintiff White purchased written materials, sound recordings, and/or video recordings sold by PCH, including but not limited to subscriptions to magazines, prior to July 31, 2016 (including during the relevant pre-July 31, 2016 time period)" and denies that "[w]hile residing in, a citizen of, and present in Michigan, Plaintiff White purchased such products, including such magazine subscriptions, directly from PCH."  PCH also denies the following allegations because PCH has no record of White having purchased anything from PCH prior to July 31, 2016: (1) "[p]rior to and at the time Plaintiff White purchased such products (including magazine subscriptions) from PCH, PCH did not notify Plaintiff White that it discloses the Private Purchase Information of its customers, and Plaintiff White has never authorized PCH to do so"; (2) "Plaintiff White was never provided any written notice that PCH rents, exchanges, or otherwise discloses its customers' Private

Purchase Information, or any means of opting out"; (3) "[s]ince purchasing

products (including magazine subscriptions) from PCH, and during the relevant

pre-July 31, 2016 time period, PCH disclosed, without the requisite consent or

prior notice, Plaintiff White's Private Purchase Information to data aggregators,

data appenders, and/or data cooperatives, who then supplement that information

with data from their own files"; and (4) "during that same period, PCH rented or

exchanged mailing lists containing Plaintiff White's Private Purchase Information

to third parties seeking to contact PCH customers, without first obtaining the

requisite written consent from Plaintiff White or even giving her prior notice of the

rentals, exchanges, and/or other disclosures."  As to White's remaining allegation

that she "is a natural person and citizen of the State of Michigan and resides in

Lapeer, Michigan[,]" PCH is without knowledge or information sufficient to form

a belief as to the truth or falsity of that allegation and, therefore, denies that

allegation.

27.     PCH admits that it does business throughout Michigan and the entire

United States.  PCH admits that it has sold in the past "written materials" and

"audiovisual materials," but PCH denies that it has sold all the types of "written

materials" and "audiovisual materials" listed by Plaintiffs in Paragraph 27 of the

SAC.

## <u>JURSIDICTION AND VENUE</u>

28.     Paragraph 28 of the SAC contains legal conclusions to which no response is required.

29.     Paragraph 29 of the SAC contains legal conclusions to which no response is required.

30.     Paragraph 30 of the SAC contains legal conclusions to which no response is required.

## FACTUAL BACKGROUND

31.     Paragraph 31 of the SAC includes quotations and citations to statements made by United States Senators.  PCH states that the statements speak for themselves.

32.     Paragraph 32 of the SAC includes quotations and citations relating to the Michigan legislature's enactment of the PPPA.  PCH states that the statements speak for themselves.

33.     Paragraph 33 of the SAC quotes the language of the previous version of the PPPA.  PCH states that the language of the PPPA is public knowledge to which no response is required.

34.     Paragraph 34 of the SAC includes quotations and citations relating to the Michigan legislature's enactment of the PPPA.  PCH states that the statements speak for themselves.

35.    Paragraph 35 of the SAC includes quotations and citations to statements made by a United States Congressman.  PCH states that the statements speak for themselves.

36.    Paragraph 36 of the SAC includes quotations and citations to statements made by a United States Congressman.  PCH states that the statements speak for themselves.

37.    Paragraph 37 of the SAC includes quotations and citations relating to the Michigan legislature's enactment of the PPPA.  PCH states that the statements speak for themselves.

38.    PCH denies the allegations in Paragraph 38 of the SAC.

### The Private Information Market: Consumers' Private Information Has Real Value[6]

39.    Paragraph 39 of the SAC includes quotations from and citations to statements made by a member of the Federal Trade Commission in 2001.  PCH states that the statements speak for themselves.

40.    PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 40 of the SAC and, therefore, denies the allegations.

---

[6] PCH has included in its Answer the headings from Plaintiffs' SAC solely for organizational purposes.   PCH does not admit and expressly denies the statements included in the headings from Plaintiffs' SAC.

41.     Paragraph 41 of the SAC includes quotations from a member of the Federal Trade Commission.  PCH states that the statements speak for themselves.

42.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 42 of the SAC and, therefore, denies the allegations.

43.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 43 of the SAC and, therefore, denies the allegations.

44.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 44 of the SAC and, therefore, denies the allegations.

45.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 45 of the SAC and, therefore, denies the allegations.

46.     Paragraph 46 of the SAC includes quotations from and citations to statements made by the Co-Chairman of the Congressional Bi-Partisan Privacy Caucus.  PCH states that the statements speak for themselves.

47.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 47 of the SAC and, therefore, denies the allegations.

48.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 48 of the SAC and, therefore, denies the allegations.

49.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 49 of the SAC and, therefore, denies the allegations.

50.     PCH denies that it is "jeopardizing its customers' privacy and well-being in exchange for increased revenue."  PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 50 of the SAC and, therefore, denies the allegations.

51.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 51 of the SAC and, therefore, denies the allegations.

### *Consumers Place Monetary Value on Their Privacy and Consider Privacy Practices When Making Purchases*

52.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 52 of the SAC and, therefore, denies the allegations.

53.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 53 of the SAC and, therefore, denies the allegations.

54.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 54 of the SAC and, therefore, denies the allegations.

55.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 55 of the SAC and, therefore, denies the allegations.

56.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 56 of the SAC and, therefore, denies the allegations.

57.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 57 of the SAC and, therefore, denies the allegations.

### PCH Unlawfully Rents, Exchanges, and Discloses
### Its Customers' Private Purchase Information

58.     PCH admits that it maintains customer records that include, among other things, products purchased by its customers.  Any additional allegations in Paragraph 58 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second

amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

59.     The allegations in Paragraph 59 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by

paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

60.     The allegations in Paragraph 60 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

61.     The allegations in Paragraph 61 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of

Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

62.    PCH denies the allegations in Paragraph 62 of the SAC.

63.    PCH denies that it "was engaged in these practices throughout the relevant pre-July 31, 2016 time period."  PCH further denies that "[d]uring that time period, PCH systematically rented, sold, exchanged, or otherwise disclosed all of its subscribers' Private Purchase Information to" LSC. The remaining allegations in Paragraph 63 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*,

2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

64.     PCH admits that "Consumers can purchase written materials…and audiovisual materials…from PCH through numerous media outlets, including the Internet, telephone, or traditional mail."  PCH denies that it "has never required the individual to read or affirmatively agree to any terms of service, privacy policy, or information-sharing policy during the relevant pre-July 31, 2016 time period." PCH further denies that "during the relevant pre-July 31, 2016 time period, PCH uniformly failed to obtain any form of consent from – or even provide effective notice to – its customers before disclosing their Private Purchase Information."

65.     PCH denies the allegations in Paragraph 65 of the SAC.

66.     PCH denies the allegations in Paragraph 66 of the SAC.

## CLASS ACTION ALLEGATIONS

67.     PCH admits that "Plaintiffs seek to represent a class defined as all Michigan residents who, at any point during the relevant pre-July 31, 2016 time period, had their Private Purchase Information disclosed to third parties by PCH without consent (the 'Class')" and admits that Plaintiffs have "[e]xcluded from the Class…any entity in which Defendant has a controlling interest, and officers or directors of Defendant."

68.     PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 68 of the SAC and, therefore, denies the allegations.

69.     Paragraph 69 of the SAC contains legal conclusions to which no response is required.  To the extent Paragraph 69 is intended to contain statements of fact, PCH states that PCH it is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 69 of the SAC and, therefore, denies the allegations.

70.     Paragraph 70 of the SAC contains legal conclusions to which no response is required.  To the extent Paragraph 70 is intended to contain statements of fact, PCH states that PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 70 of the SAC and, therefore, denies the allegations.

71.     Paragraph 71 of the SAC contains legal conclusions to which no response is required.  To the extent Paragraph 71 is intended to contain statements of fact, PCH states that PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 71 of the SAC and, therefore, denies the allegations.

72.     Paragraph 72 of the SAC contains legal conclusions to which no response is required.  To the extent Paragraph 72 is intended to contain statements of fact, PCH states that PCH is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegations in Paragraph 72 of the SAC and, therefore, denies the allegations.

## CAUSE OF ACTION
### Violation of Michigan's Preservation of Personal Privacy Act
### (PPPA § 2)

73.     PCH repeats its denials and admissions contained in the foregoing paragraphs as if fully set forth herein.

74.      PCH admits that Plaintiffs "bring this claim individually" and purport to bring it "on behalf of members of the Class against Defendant PCH."

75.     Paragraph 75 of the SAC contains legal conclusions to which no response is required.  To the extent that Paragraph 75 in the SAC is intended to include allegations of fact, PCH states as follows: (1) PCH admits that it sells magazine subscriptions, books, music, and videos (including movies and television

shows) directly to consumers; and (2) PCH denies any remaining allegations in Paragraph 75 of the SAC.

76.     Paragraph 76 of the SAC contains legal conclusions to which no response is required.  To the extent that Paragraph 76 is intended to include allegations of facts, PCH states as follows: (1) PCH denies that all Plaintiffs purchased "subscriptions to magazines and/or books from PCH"; and (2) PCH denies any remaining allegations in Paragraph 76 of the SAC.

77.     Paragraph 77 of the SAC contains legal conclusions to which no response is required.  To the extent that Paragraph 77 is intended to include allegations of facts, PCH states as follows: (1) PCH denies that all Plaintiffs purchased "video recordings and sound recordings directly from PCH"; and (2) PCH denies any remaining allegations in Paragraph 77 of the SAC.

78.     Paragraph 78 contains legal conclusions to which no response is required.  To the extent that Paragraph 78 is intended to include allegations of facts, PCH states as follows: (1) PCH denies that all Plaintiffs purchased "written materials, video recordings and/or sound recordings directly from PCH"; and (2) PCH denies any remaining allegations in Paragraph 78 of the SAC.

79.      The allegations in Paragraph 79 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of

Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

80.     The allegations in Paragraph 80 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to

refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

81.    The allegations in Paragraph 81 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

82.     The allegations in Paragraph 82 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

83.     The allegations in Paragraph 83 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims

that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

84.     The allegations in Paragraph 84 are not limited to either LSC or NextMark and, therefore, have been dismissed by the Court. *See, e.g.*, *Turner*, 2009 WL 103977, at *1 (granting defendants' motion to strike "those portions of Plaintiff's amended complaint that allege cause of action previously dismissed by the Court"); *Babakr*, 2021 WL 3074115, at *4 (agreeing that "large swaths of plaintiff's proposed second amended complaint don't accurately reflect the claims that remain and [noting that] plaintiff hasn't taken Judge Crow's prior rulings into account when filing this motion and submitting his second proposed amended complaint" and therefore striking multiple allegations and directing plaintiff to refile); *Mechigian*, 639 F. Supp. at 704 (stating that it would be "unfair to require defendants to answer plaintiff's 95 page Amended Complaint paragraph by paragraph when the clear majority of the claims it asserts have already been

dismissed" and directing defendants to "simply . . . answer only those portions of the Amended Complaint which have not already been dismissed").

85.    PCH denies the allegations in Paragraph 85 of the SAC.

86.    PCH can neither admit nor deny the allegations in Paragraph 86 of the SAC because PCH was not in possession of Private Purchase Information, as that term is defined by Plaintiffs in the SAC, for each of the Plaintiffs.  To the extent that an admission or denial is required for the allegations in Paragraph 86 of the SAC, PCH denies the allegations.

87.    PCH can neither admit nor deny the allegations in Paragraph 87 of the SAC because PCH was not in possession of Private Purchase Information, as that term is defined by Plaintiffs in the SAC, for each of the Plaintiffs.  To the extent that an admission or denial is required for the allegations in Paragraph 87 of the SAC, PCH denies the allegations.

88.    PCH can neither admit nor deny the allegations in Paragraph 88 of the SAC because PCH was not in possession of Private Purchase Information, as that term is defined by Plaintiffs in the SAC, for each of the Plaintiffs.  To the extent that an admission or denial is required for the allegations in Paragraph 88 of the SAC, PCH denies the allegations.

89.    PCH can neither admit nor deny the allegations in Paragraph 89 of the SAC because PCH was not in possession of Private Purchase Information, as that

term is defined by Plaintiffs in the SAC, for each of the Plaintiffs.  To the extent that an admission or denial is required for the allegations in Paragraph 89 of the SAC, PCH denies the allegations.

90.    PCH can neither admit nor deny the allegations in Paragraph 90 of the SAC because PCH was not in possession of Private Purchase Information, as that term is defined by Plaintiffs in the SAC, for each of the Plaintiffs.  To the extent that an admission or denial is required for the allegations in Paragraph 90 of the SAC, PCH denies the allegations.

91.    PCH denies the allegations in Paragraph 91 of the SAC.

92.    PCH denies the allegations in Paragraph 92 of the SAC.

## **PRAYER FOR RELIEF**

This paragraph contains legal conclusions to which no response is required. To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

A.    This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

B.     This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

C.     This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

D.     This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

E.     This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

F.      This paragraph contains legal conclusions to which no response is required.  To the extent this paragraph is intended to include any allegations of fact, PCH denies each and every allegation contained in this paragraph, including that Plaintiffs and the putative class are entitled to any relief whatsoever in this action.

## PCH'S AFFIRMATIVE AND OTHERDEFENSES
## FIRST DEFENSE
### (Failure to State a Claim)

1.      The SAC fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Statute of Limitations)

2.      The SAC is barred, in whole or in part, by the applicable statutes of limitation, including, but not limited to, Mich. Comp. Laws § 600.5813.

## THIRD DEFENSE
### (Subject Matter Jurisdiction)

3.      The Court lacks subject matter jurisdiction over this class action because most, if not all, Plaintiffs have not suffered any injury or harm cognizable under Article III of the United States Constitution, given that most, if not all, did not purchase, prior to July 31, 2016, products from PCH to which the PPPA applies.

## FOURTH DEFENSE
### (Prior Consent or Permission)

4.     The SAC is barred, in whole or in part, on grounds of prior consent or

permission.

### FIFTH DEFENSE
### (No Class Capable of Certification)

5.     Plaintiffs have not validly stated a class of litigants capable of

certification for a class under the Federal Rules of Civil Procedure.

### SIXTH DEFENSE
### (Inadequate Representation)

6.     Plaintiffs will not fairly and adequately protect the interests of the

class because, among other things, the purported class may have purchased

products from PCH different from those purchased by Plaintiffs (if any) and those

purchases may, or may not, be governed by the PPPA.

### SEVENTH DEFENSE
### (Insufficient Facts to Support Class Certification)

7.     The SAC is barred, in whole or in part, on the grounds that Plaintiffs

do not allege facts sufficient to support class certification.

### EIGHTH DEFENSE
### (Inappropriate Method for Adjudication)

8.     A class action is not the appropriate method for fair and efficient

adjudication of the alleged controversy because, among other things, the purported

class may have purchased products from PCH different from those purchased by

Plaintiffs (if any) and those purchase may, or may not, be governed by the PPPA.

**NINTH DEFENSE**
**(Excessive Fines)**

9.      The PPPA, codified at Mich. Comp. Laws § 445, *et seq*., upon which Plaintiffs' claims rely, violates the Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution, which prohibit the imposition of grossly excessive or arbitrary punishment on a defendant, and if a class were to be certified and liability were to be found, the statutory damages provided for in the PPPA would be grossly disproportionate to any "harm" suffered by the class members.

**TENTH DEFENSE**
**(No Statutory Damages)**

10.     Plaintiffs are not entitled to statutory damages because PCH has not engaged in any conduct in violation of the TCPA.

**ELEVENTH DEFENSE**
**(Uncertainty)**

11.     Plaintiffs' claims are barred, in whole or in part, to the extent that they are uncertain in pleading the material allegations thereof.

**TWELFTH DEFENSE**
**(Abatement of Damages)**

12.     Should PCH be found liable to Plaintiffs, which liability is expressly denied, PCH is entitled to have the amount of damages abated, reduced or eliminated to the extent the negligence, carelessness, or fault of other persons,

corporations, or business entities caused or contributed to Plaintiffs' damages, if any.

## THIRTEENTH DEFENSE
### (Other Defenses)

13.     PCH claims the benefit of all other defenses and presumptions set forth in or arising from any rule of law or statute or any other rule of law that is deemed to apply in this action.  PCH reserves the right to assert any additional defenses which may be disclosed during the course of additional investigation and discovery.

## PRAYER

WHEREFORE, having fully answered, PCH respectfully prays for judgment as follows:

1.     that the Court deny Plaintiffs' request for certification of a class;

2.     that judgment be entered in favor of PCH and against Plaintiffs;

3.     that Plaintiffs take nothing from PCH by their suit;

4.     that the SAC be dismissed in its entirety with prejudice; and

5.     for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**BAKER HOSTETLER LLP**

Dated: August 27, 2024

By: */s/ Casie D. Collignon*
    Casie D. Collignon
    Matthew D. Pearson
    600 Anton Blvd., Suite 900
    Costa Mesa, CA  92626
    Tel.: (714) 754-6600
    Fax: (714) 754-6611
    Email:  ccollignon@bakerlaw.com
    Email:  mpearson@bakerlaw.com

*Attorneys for Defendant*
PUBLISHERS CLEARING HOUSE, INC.

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on August 27, 2024, I caused to be electronically filed the foregoing **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT** using the CM/ECF system, which will send notification of such filing to all counsel of record.

                    */s/ Casie D. Collignon*
                    Casie D. Collignon